**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

THOMAS JEREMY ABEYTA,

    Defendant - Appellant.

No. 17-1025

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00213-WYD-1)**
_____

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public

Defender, with him on the briefs), Office of the Federal Public Defender for the District

of Colorado, Denver, Colorado, appearing for Appellant.


Michael C. Johnson, Assistant United States Attorney (Robert C. Troyer, Acting United
States Attorney, with him on the brief), Office of the United States Attorney for the
District of Colorado, Denver, Colorado, appearing for Appellee.

_____

Before **BRISCOE**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

**BRISCOE**, Circuit Judge.
_____

This is a direct criminal appeal in which Defendant Thomas Jeremy Abeyta ("Abeyta") challenges his sentence. Abeyta pled guilty to being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court enhanced Abeyta's sentence pursuant to United States Sentencing Guidelines (the "U.S.S.G." or the "guidelines") § 4A1.2(c), counting Abeyta's prior conviction for "damaging, defacing or destruction of private property" under Denver Revised Municipal Code ("Den.") § 38-71 as a local ordinance violation that also violates state criminal law. Abeyta now appeals the sentencing enhancement. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we remand with direction to vacate Abeyta's sentence and resentence him.

**I**

On October 12, 2016, Abeyta pled guilty to being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In Abeyta's Presentence Investigation Report (the "PSR"), the probation office determined that Abeyta's prior conviction for "damaging, defacing or destruction of private property" under Denver ordinance, Den. § 38-71, counted for one criminal history point pursuant to U.S.S.G. § 4A1.2(c)(1), (d)(2)(B). The PSR also noted that Abeyta committed the instant offense while on probation for his Den. § 38-71 conviction, which led to an additional 2-point increase under U.S.S.G. § 4A1.1(d).

Because the PSR counted Abeyta's conviction under Den. § 38-71, his criminal history points increased from 7 to 10. This is due to the 1-point increase for the Den. § 38-71 conviction itself, and the 2-point increase for committing the instant

offense (violation of 18 U.S.C. § 922(g)(1)) while on probation for a countable

conviction (violation of Den. § 38-71).[1] These three points increased his criminal

history points from 7 to 10, with the resulting change in criminal history category

from category IV to category V and an increased guideline range from 21–27 months

to 27–33 months.

Generally, the guidelines count misdemeanors and petty offenses for purposes

of calculating a defendant's criminal history score, but § 4A1.2(c)(2) provides a list

of exceptions:

> (c)  Sentences Counted and Excluded
>
> Sentences for all felony offenses are counted.  Sentences for
> misdemeanor and petty offenses are counted, except as follows:
> . . . .
> > (2)  Sentences for the following prior offenses and offenses
> > similar to them, by whatever name they are known, are
> > never counted:
> > . . .
> > > Local ordinance violations (except those violations
> > > that are also violations under state criminal law)[.]

U.S.S.G. § 4A1.2(c).  More specifically, subsection (c)(2) lists "[l]ocal ordinance

violations" as an offense that is not counted under the guidelines, but there is an

exception to this exception: "(except those violations that are also violations under

state criminal law)." *Id.*  Because a Den. § 38-71 offense is a local ordinance

violation, it qualifies as an exception under § 4A1.2(c)(2), meaning that it *does not*

---

[1] That is, the 2-point increase is dependent upon first finding that a violation of Den. § 38-71 is a countable conviction—otherwise, Abeyta would not have committed the instant offense *while on probation for a countable conviction*.

count toward Abeyta's criminal history score. But, if a Den. § 38-71 offense also violates state criminal law, then the exception to the exception applies, meaning that it *does* count under the guidelines.

On December 27, 2016, Abeyta filed a written objection to the PSR, arguing (among other things) that his Den. § 38-71 conviction is a local ordinance violation that does not necessarily violate state criminal law. He noted that Colorado has a similar offense, Colo. Rev. Stat. ("Colo.") § 18-4-501 (making it "unlawful for any person knowingly to damage, deface, destroy or injure" another person's property), but argued that the Colorado statute only criminalizes conduct that actually damages property, whereas Den. § 38-71 criminalizes broader conduct, including defacement that does not cause damage. Because a violation of Den. § 38-71 does not necessarily violate Colo. § 18-4-501, Abeyta argued, the "exception to the exception" does not apply.

On January 17, 2017, the district court held a sentencing hearing. At the hearing, Abeyta repeated his objection to the PSR. The government responded by arguing that a Den. § 38-71 violation also violates Colo. § 18-4-501 under a "common sense approach," referencing text in the commentary of the guidelines. Aplt. App., Vol. III at 42. The district court agreed with the government and overruled Abeyta's objection, holding "because destruction of property could be charged under the state statute for criminal mischief, that there is sufficient similarity between the two that, using a common sense approach, it's okay to count as Probation did." *Id.* at 43.

4

The district court determined that the PSR correctly calculated the sentencing guideline range as 27–33 months. The district court sentenced Abeyta to 27 months imprisonment and 3 years of supervised release.

## II

Abeyta now appeals, arguing that the district court erred by applying a "common sense approach," and that, after correctly applying the categorical approach, his Den. § 38-71 conviction should not count toward his criminal history score. He argues that since this error affected his guideline range, the error is not harmless. *See United States v. Kieffer*, 681 F.3d 1143, 1169 (10th Cir. 2012).

"We review the district court's interpretation and application of the Sentencing Guidelines de novo." *United States v. Martinez-Villalva*, 232 F.3d 1329, 1332 (10th Cir. 2000) (quoting *United States v. Chavez-Valenzuela*, 170 F.3d 1038, 1039 (10th Cir. 1999)).

## A. The district court erred by applying a "common sense approach."

The parties appear to agree that the district court erred in applying a "common sense approach." Aplt. Br. at 10; Aple. Br. at 14 ("Abeyta correctly notes that the district court counted the local ordinance violation under § 4A1.2(c)(2) on the theory that there was 'sufficient similarity' between the ordinance violation and the state criminal law, 'using a common sense approach[.]' That was not the correct method to resolve the issue." (internal citations omitted)). We hasten to add here, however, that the district court was drawn into this "common sense approach" at the urging of the government.

5

Indeed, the "common sense approach" does not apply in this context. U.S.S.G. § 4A1.2(c)(2) states that "[s]entences for the following prior offenses *and offenses similar to them*, by whatever name they are known, are never counted." § 4A1.2(c)(2) (emphasis added). The phrase "and offenses similar to them" is open to interpretation, so Comment 12(A) explains, in relevant part: "In determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach[.]" U.S.S.G. § 4A1.2 cmt. 12(A). As the comment states, this approach applies when determining whether an *unlisted* offense is similar to a *listed* offense. Here, a Den. § 38-71 offense is a local ordinance violation—a listed offense under § 4A1.2(c)(2)—so the "common sense approach" does not apply.

Thus, our focus for comparison here is whether a listed offense (a local ordinance violation) is also a violation of state law, which would qualify as an exception to the listed offense.

**B.      The categorical approach applies.**

To compare the Denver ordinance at issue here with any parallel state criminal statute, we must first determine the applicable framework for that comparison, *i.e.*, whether the categorical approach or the factual approach applies. This determination of the applicable approach is a question of statutory interpretation. *See Taylor v. United States*, 495 U.S. 575, 600 (1990) (interpreting 18 U.S.C. § 924(e) to require a categorical approach).

6

"Depending on the language of the enhancement," we have employed either the "categorical approach" or the "factual approach." *United States v. Martinez-Hernandez*, 422 F.3d 1084, 1086–87 (10th Cir. 2005). We employ the categorical approach "when the language of the enhancement confines the court's inquiry to the terms of the statute of conviction." *Id.* at 1086 (internal quotation marks and citations omitted). This approach "look[s] not to the particular facts of the prior conviction but to the terms of the underlying statute." *Id.* On the other hand, we employ the factual approach "when the language of the enhancement requires courts to look at the specific facts underlying the prior offense." *Id.* at 1087 (internal quotation marks and citations omitted). Unlike the categorical approach, the factual approach "look[s] not only at the terms of the statute of conviction, but also at the underlying facts." *Id.*

Here, the guideline at issue does not make any reference to the underlying facts of the prior conviction. Rather, § 4A1.2(c)(2) simply excepts "[l]ocal ordinance violations (except those violations that are also violations under state criminal law)." Comment 12(B), which speaks directly to the local ordinance exception, explains that the exception to the exception exists because some local ordinances are exactly the same as state criminal statutes, and were only enacted to give local municipalities jurisdiction over the same conduct.[2] U.S.S.G. § 4A1.2 cmt. 12(B). This too

---

[2] In full, Comment 12(B) states:

(continued . . .)

supports the applicability of the categorical approach, as it suggests the exception to

the exception exists to account for local ordinance offenses that mirror state criminal

offenses. Which, in turn, suggests that our task is to compare the language of the

ordinance to the language of the statute.

Because § 4A1.2(c)(2) appears to confine the court's inquiry to the statute of

conviction, rather than allowing the court to examine the underlying conduct, we

conclude that the categorical approach applies when determining whether local

ordinance violations "are also violations under state criminal law." U.S.S.G.

§ 4A1.2(c)(2).

**C.     Den. § 38-71 is not divisible.**

In applying the categorical approach, a court must determine whether the

*modified* categorical approach is appropriate. "Courts employ the modified

categorical approach when a prior conviction is based on 'a so-called "divisible

statute,"' one that 'sets out one or more elements of the offense in the alternative.'"

*United States v. Titties*, 852 F.3d 1257, 1266 (10th Cir. 2017) (quoting *Descamps v.*

---

(continued . . .)

> A number of local jurisdictions have enacted ordinances covering
> certain offenses (e.g., larceny and assault misdemeanors) that are
> also violations of state criminal law. This enables a local court
> (e.g., a municipal court) to exercise jurisdiction over such
> offenses. Such offenses are excluded from the definition of local
> ordinance violations in § 4A1.2(c)(2) and, therefore, sentences
> for such offenses are to be treated as if the defendant had been
> convicted under state law.

U.S.S.G. § 4A1.2 cmt. 12(B).

*United States*, 133 S. Ct. 2276, 2281(2013)).  "A statute is divisible only if it 'sets out one or more elements of the offense in the alternative,'" *id.* at 1267 (quoting *Descamps*, 133 S. Ct. at 2281), but "[i]t is not enough that a statute is framed in the disjunctive," *id.*  Rather, "the statutory phrases listed in the alternative must be elements, not means." *Id.*

Den. § 38-71 is an alternatively phrased ordinance.  In relevant part, the ordinance makes it "unlawful for any person knowingly to *damage, deface, destroy or injure* the real property of one (1) or more other persons."  Den. § 38-71 (emphasis added).

Where, as here, the court is faced with an alternatively phrased statute, the "first task" is "to determine whether its listed items are elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).  "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Id.* at 2248 (internal quotation marks and citations omitted).  The means, however, "are mere real-world things—extraneous to the crime's legal requirements." *Id.*  Stated differently, they are "[h]ow a given defendant actually perpetrated the crime." *Id.* at 2251.  If the listed items are "elements," the statute is divisible, and the court considers the particular elements that were necessarily proven to support the defendant's prior conviction (i.e., the court applies the modified categorical approach). *Titties*, 852 F.3d at 1266–67.  If the listed items are "means," the statute is indivisible, and the court considers all items when considering the prior conviction. *Id.* at 1267-68.

9

There are three general tools courts use to decide whether listed items in an alternatively phrased criminal law are elements or means: (1) the statutory text; (2) state court decisions; and (3) the record of the prior conviction itself. *Id.* at 1267–68. The text of Den. § 38-71 is not particularly helpful here. First, Den. § 38-71 does not separate the listed items into different subsections; the listed items appear in the same sentence in the same paragraph. Second, the listed items do not "carry different punishments," which would have indicated that they were elements. *Mathis*, 136 S. Ct. at 2256. Nor is there "a state court decision [that] definitively answers the question." *Id.* The parties have not cited any Colorado case that would apply here, and we likewise could fine none.

Instead, the government relies on the third tool—"the record of a prior conviction itself." *Titties*, 852 F.3d at 1268 (quoting *Mathis*, 136 S. Ct. at 2256). This third inquiry is limited to a narrow set of record documents approved by the Supreme Court in *Shepard v. United States*, 544 U.S. 13 (2005): "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information."[3] *Id.* at 26; *see also Titties*, 852 F.3d at 1266 n.9 (listing "charging documents, plea agreements,

---

[3] Although the Supreme Court has not held that this list is exhaustive, it has rebuffed "argu[ments] for a wider evidentiary cast . . . going beyond conclusive records made or used in adjudicating guilt and looking to documents submitted to lower courts even prior to charges." *Shepard v. United States*, 544 U.S. 13, 21 (2005).

10

transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms") (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)).

Here, the government contends that "Abeyta's municipal violation record confirms that specific conduct is an element." Aple. Br. at 12. More precisely, the government relies on a docket sheet that describes Abeyta's Den. § 38-71 conviction as "DESTRUCTION OF PRIVATE PROPERTY." *Id.*; Aplt. App., Vol. I at 46. A docket sheet, however, is insufficient to show that a listed item in an alternatively phrased statute is an element (rather than a means) of a crime. *See United States v. Enrique-Ascencio*, 857 F.3d 668, 677 (5th Cir. 2017) ("Docket sheets and case summaries also are not *Shepard*-approved documents because they were prepared by court clerical staff not judges." (internal quotation marks omitted)). This is because *Shepard* documents are limited to "conclusive records made or used in adjudicating guilt." 544 U.S. at 21. Docket sheets fall far short of this standard.

Because the docket sheet does not "satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense," *Mathis*, 136 S. Ct. at 2257 (quoting *Shepard*, 544 U.S. at 21), we cannot employ the modified categorical approach here. Consequently, we must examine Den. § 38-71 as a whole, under the categorical approach.

11

**D.    Abeyta's Den. § 38-71 conviction should not have counted toward his guideline calculation.**

Before the district court, the government argued that Abeyta's local ordinance violation is also a violation under state criminal law (thus, meeting the exception to the exception) because a violation of Den. § 38-71 is also a violation of Colo. § 18-4-501, entitled "Criminal mischief."  That statute states:

> A person commits criminal mischief when he or she knowingly damages the real or personal property of one or more other persons, including property owned by the person jointly with another person or property owned by the person in which another person has a possessory or proprietary interest, in the course of a single criminal episode.

Colo. § 18-4-501(1) (the "Colorado criminal mischief statute").  On appeal, the government also relies on Colo. § 18-4-509, entitled "Defacing property—definitions," which states:

> Any person who defaces or causes, aids in, or permits the defacing of public or private property without the consent of the owner by any method of defacement, including but not limited to painting, drawing, writing, or otherwise marring the surface of the property by use of paint, spray paint, ink, or any other substance or object, commits the crime of defacing property.

Colo. § 18-4-509(1)(b) (the "Colorado defacing property statute").

Although the government failed to raise the Colorado defacing property statute before the district court, the government points out that we can exercise our discretion to consider an alternative theory when "the appellant has had a fair opportunity to address that ground."  *United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012) (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir.

12

2009)).  We exercise our discretion to reach the government's alternative argument because, even considering both Colorado statutes, the elements of Den. § 38-71 are broader than Colorado criminal law.  *See id.* at 845 ("Because we reject the government's theory on appeal, . . . we exercise our discretion to consider [the government's alternative theory].").

Applying the categorical approach, the government argues that the elements of Den. § 38-71 fit within the elements of the Colorado criminal mischief statute and the Colorado defacing property statute.  In essence, the government argues that the two Colorado statutes, together, cover all possible illegal conduct under Den. § 38-71.[4]

In relevant part, Den. § 38-71(a) makes it "unlawful for any person knowingly to damage, deface, destroy or injure" another person's property.  And Den. § 38-71(b) defines "deface" as "writing, painting, inscribing, drawing, scratching or scribbling upon any wall or surface owned, operated or maintained by any person, unless there is written permission for said writing, painting, inscribing, drawing, scratching or scribbling."

The government essentially breaks the alternatively phrased part of Den. § 38-71(a) into two parts:  (1) "damage, . . . destroy or injure," and (2) "deface."  The first part, the government argues, is covered by the Colorado criminal mischief statute,

---

[4] The government does not cite any authority for its ability to combine two separate criminal statutes as the umbrella state law, under which all of Den. § 38-71 (arguably) fits.  Because Abeyta does not contend otherwise, we do not reach this question.

13

which makes it a crime to "knowingly damage the real or personal property of one or more other persons."[5]  Colo. § 18-4-501.  The second part, the government argues, is covered by the Colorado defacing property statute, which criminalizes "the defacing of public or private property without the consent of the owner."  Colo. § 18-4-509(1)(b).

Abeyta's appeal focuses on the second part, and how it sweeps more broadly than the Colorado defacing property statute:

> Section 38-71 criminalizes defacing property unless "there is *written permission* for" the defacement (emphasis added).  The statute newly raised by the government, on the other hand, criminalizes defacement "without the *consent* of the owner." [Colo.] § 18-4-509(1)(b) (emphasis added).

Aplt. Reply at 1–2.  Thus, Abeyta argues that the Colorado defacing property statute's phrase "without the consent of the owner," Colo. § 18-4-509(1)(b), encompasses forms of consent beyond written consent, criminalizing less conduct than Den. § 38-71.  For example, "one who defaces property with the oral (or implied) consent of the owner has violated [Den. §] 38-71 but would also escape liability under [Colo. §] 18-4-509(1)(b)."  *Id.* at 2.

We agree.  The term "consent" usually encompasses more than written permission.  *See, e.g.*, *Consent*, Black's Law Dictionary (10th ed. 2014) (defining "consent" as a "voluntary yielding to what another proposes or desires; agreement,

---

[5] The government does not explain how "damage, . . . destroy or injure" in Den. § 38-71 can all fit under "damage" in Colo. § 18-4-501.  Because Abeyta does not argue otherwise, we do not reach this question.

approval, or permission regarding some act or purpose, esp. given voluntarily by a competent person; legally effective assent"). And, as Abeyta notes, "when the Colorado legislature wants to limit consent to written consent, it does so expressly." Aplt. Reply at 3 (citing Colo. §§ 18-4-511(2)(c), 18-5-504, among other Colorado statutes).

At oral argument, the government cited *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007), for the proposition that Abeyta must show a realistic probability that the City of Denver would prosecute a defendant who violated Den. § 38-71 and had previously obtained oral, but not written, permission. In relevant part, *Duenas-Alvarez* held:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than *the application of legal imagination* to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.* at 193 (emphasis added).

But "[t]his is not a case where we need to imagine hypothetical . . . facts to take [Den. § 38-71] outside [the Colorado defacing property statute's] ambit." *Titties*, 852 F.3d at 1274 & n.21 (rejecting the government's reliance on *Duenas-Alvarez*). The local ordinance explicitly states that *written* permission would excuse the defacement, whereas the Colorado defacing property statute states that

15

"consent"—without qualification—would excuse the defacement. *Compare* Den. § 38-71, *with* Colo. § 18-4-509(1)(b). And "[t]he Government gives no persuasive reason why we should ignore this plain language to pretend the statute is narrower than it is." *Titties*, 852 F.3d at 1274.

Because a Den. § 38-71 violation is a local ordinance violation that does not necessarily violate Colorado state criminal law, Abeyta's prior conviction does not qualify as a countable misdemeanor or a petty offense under U.S.S.G. § 4A1.2(c). And because Abeyta's Den. § 38-71 conviction is not a countable offense, he did not commit the instant offense while on probation for a countable offense under U.S.S.G. § 4A1.1(d).

## III

We remand with direction to vacate Abeyta's sentence and to resentence him.

16