**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JESSE BUD LEAVERTON,

    Defendant - Appellant.

No. 17-5001

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:16-CR-00080-GKF-1)**
_____

William P. Widell, Jr., Assistant Federal Public Defender, Tulsa, Oklahoma (Barry L. Derryberry, Assistant Federal Public Defender, Tulsa, Oklahoma; Julia L. O' Connell, Federal Public Defender, Tulsa, Oklahoma, with him on the briefs), for Defendant-Appellant.

Timothy L. Faerber, Office of the United States Attorney, Tulsa, Oklahoma (Neal C. Hong, Office of the United States Attorney, Tulsa, Oklahoma; Loretta F. Radford, Acting United States Attorney, with him on the brief), for Plaintiff-Appellee.
_____

Before **LUCERO**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

Jesse Leaverton was convicted of three counts of bank robbery. At sentencing, the district court concluded that 18 U.S.C. § 3559(c) applied because Leaverton had

been previously convicted of two serious violent felonies, enhancing his sentence from a maximum of twenty years to a mandatory term of life imprisonment. Leaverton now appeals, arguing that his prior conviction for Oklahoma manslaughter does not qualify under § 3559(c). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we reverse Leaverton's sentence and remand to the district court for resentencing.

## I

Leaverton was convicted of three counts of bank robbery in violation of 18 U.S.C. § 2113(a). His Presentence Investigation Report ("PSR") calculated a total offense level of 27 and a criminal history category of III, resulting in an advisory Guidelines range of 87 to 108 months. However, the government contended that Leaverton was subject to a mandatory life sentence under 18 U.S.C. § 3559(c)(1). That statute requires that anyone convicted of "a serious violent felony" who has two or more prior convictions for serious violent felonies be sentenced to life imprisonment. § 3559(c)(1). A serious violent felony is one that falls within a list of enumerated offenses or is punishable by a term of imprisonment of at least ten years and meets certain other criteria. § 3559(c)(2)(F).

The sole point of contention was whether Leaverton's prior conviction for Oklahoma Manslaughter I qualified as a serious violent felony. That statute contains three subsections. See Okla. Stat. tit. 21, § 711. The government argued that Leaverton was convicted under a subsection that applies when a killing is "perpetrated without a design to effect death, and in a heat of passion, but in a cruel

2

and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide." Okla. Stat. tit. 21, § 711(2). In support of its argument, the government attached a docket sheet that described Leaverton as pleading guilty to "MANSLAUGHTER I, SECTION #2, TITLE 711."

At sentencing, the district court found that Leaverton had been convicted under subsection two. It held that this conviction qualified as a serious violent felony and thus Leaverton met the requirements of § 3559(c). The court imposed a sentence of life imprisonment. Leaverton timely appealed.

## II

We review de novo whether a prior conviction qualifies as a serious violent felony under § 3559(c). United States v. Cooper, 375 F.3d 1041, 1053 (10th Cir. 2004).

## A

In determining whether a previous crime meets a statutory definition, there are two potential approaches, "the categorical approach and the circumstance-specific approach." United States v. White, 782 F.3d 1118, 1130 (10th Cir. 2015). Under the former, we look only to "the elements of the statute forming the basis of the defendant's conviction," and if a statute is divisible, to "a limited class of documents," rather than the particular facts of a defendant's conduct. Id. at 1130-31. Under the latter, we "consider the facts and circumstances underlying an offender's conviction." Id. at 1131 (quotation omitted). Both parties state that the categorical

3

approach applies under § 3559(c), although our court has not expressly considered the question. We agree.

The definition of serious violent felony includes two subsections. The first covers:

> a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244 (a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses . . . .

§ 3559(c)(2)(F)(i). The second applies to:

> any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

§ 3559(c)(2)(F)(ii).

As we have previously noted, "a reference to a corresponding section of the criminal code strongly suggests a generic intent." White, 782 F.3d at 1132. And references to the elements of an offense are also highly indicative that the categorical

4

approach applies.  See United States v. Martinez-Hernandez, 422 F.3d 1084, 1087

(10th Cir. 2005).[1]

We must determine whether Leaverton's prior conviction for manslaughter in

Oklahoma categorically qualifies as a serious violent felony.  The Oklahoma statute

at issue provides:

> Homicide is manslaughter in the first degree in the following cases:
>
> 1.  When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.
>
> 2.  When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.
>
> 3.  When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

Okla. Stat. tit. 21, § 711.

Section 711 contains three alternative subsections under which a defendant

could be convicted.  We accordingly consider whether the statute is divisible.  A

---

[1] We have previously held that the categorical approach does not apply in determining whether a defendant has satisfied § 3559(c)(3)(A).  United States v. Mackovich, 209 F.3d 1227, 1240 (10th Cir. 2000).  That subsection creates an exception to the general definition of serious violent felony, providing that certain robbery convictions do not qualify as serious violent felonies if a defendant can prove by clear and convincing evidence that no firearm or threat was involved and the offense did not result in serious bodily injury.  However, use of the circumstance-specific approach as to that exception does not require us to abandon the categorical approach under § 3559(c) generally.  See White, 782 F.3d at 1135 ("Congress intended courts to apply a categorical approach to sex offender tier classifications designated by reference to a specific federal criminal statute, but to employ a circumstance-specific comparison for the limited purpose of determining the victim's age.").

divisible statute "sets out one or more elements of the offense in the alternative." United States v. Titties, 852 F.3d 1257, 1266 (10th Cir. 2017) (quotation omitted). Courts considering a prior conviction under a divisible statute apply the "modified categorical approach" to "identify the elements of the crime of conviction." Id. (quotation omitted). The modified categorical approach applies only when a statute sets out alternative elements, rather than alternative means. Id. "Elements are the constituent part of a crime's legal definition, the things the prosecution must prove beyond a reasonable doubt." Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). Means are merely the facts underlying the crime, "extraneous to the crime's legal requirements." Id.

We conclude that Oklahoma's manslaughter I statute is divisible. Although the text of the statute is not dispositive, Oklahoma's Uniform Jury Instructions indicate that each subsection requires proof of a different set of elements. Compare OUJI-CR 4-94 (instructions for subsection 1), with OUJI-CR 4-95 (instructions for subsection 2), and OUJI-CR 4-102 (instructions for subsection 3). And the Oklahoma Court of Criminal Appeals ("OCCA") has specified the "elements" of the particular subsection of manslaughter in considering the adequacy of evidence. See Barnett v. State, 271 P.3d 80, 86-87 (Okla. Crim. App. 2012). Because the statute is divisible, the modified categorical approach applies.

In employing the modified categorical approach, we "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative elements formed the basis of the prior conviction."

6

Titties, 852 F.3d at 1266. Courts may look to charging documents, jury instructions, a "statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court." Shepard v. United States, 544 U.S. 13, 20 (2005) (citation omitted). However, other documents submitted to the court, such as police reports, may not be considered. Id. at 21. The analysis must "be confined to records of the convicting court approaching the certainty of the record of conviction." Id. at 23.

At sentencing, the district court relied on a minute entry from the state court's docket sheet that described Leaverton as pleading guilty to "MANSLAUGHTER I, SECTION #2, TITLE 711." Leaverton argues that this minute entry is insufficiently reliable to establish the subsection under which he was convicted. The government concedes that Leaverton's prior conviction would not qualify as a serious violent felony unless the court refers to the docket sheet to identify the particular subsection forming the basis of his conviction.

After briefing was complete in this case, we concluded that docket sheets do not qualify as Shepard documents. See United States v. Abeyta, 877 F.3d 935, 942 (10th Cir. 2017). In Abeyta, the government sought to establish that a municipal ordinance was divisible by pointing to the defendant's docket sheet, which used one particular statutory term from a disjunctive list. Id. at 941-42. We held that the record was "insufficient to show that a listed item in an alternatively phrased statute is an element (rather than a means) of a crime." Id. at 942. We further stated

"Shepard documents are limited to conclusive records made or used in adjudicating guilt" and "[d]ocket sheets fall far short of this standard." Id.

The issue in this case differs somewhat from that presented in Abeyta. Rather than using a docket sheet to show that a statute is divisible, the government urges us to consider the docket sheet to show which subsection of a divisible statute formed the basis of Leaverton's prior conviction. We need not definitively determine whether Abeyta's holding regarding docket sheets is controlling as to the issue in this case. Even if we could determine that Leaverton committed a homicide "without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon" but not "under such circumstances as constitute excusable or justifiable homicide," Okla. Stat. tit. 21, § 711(2), we would be left to consider whether his offense qualifies as a serious violent felony under § 3559(c)(2)(F)(i). The district court concluded that his prior conviction constituted one of the statute's enumerated offenses, "manslaughter other than involuntary manslaughter (as described in section 1112)." § 3559(c)(2)(F)(i). The federal definition of manslaughter is as follows:

> Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:
> Voluntary—Upon a sudden quarrel or heat of passion.
> Involuntary—In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution or circumspection, of a lawful act which might produce death.

18 U.S.C. § 1112(a).

8

Leaverton argues that § 3559(c)(2)(F)(i) requires that the crime of conviction be equivalent to voluntary federal manslaughter. That is, the statute's parenthetical "(as described in section 1112)" modifies both nouns that appear before it: "manslaughter" and "involuntary manslaughter." The government argues that the parenthetical refers only to "involuntary manslaughter," such that "manslaughter" is not limited to the federal definition set out in § 1112. We agree with the government's interpretation. That reading is consistent with "the grammatical rule of the last antecedent, according to which a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." Jama v. Immigration & Customs Enf't, 543 U.S. 335, 343 (2005) (quotation and alteration omitted). Although the last antecedent rule is by no means absolute, see Payless Shoesource, Inc. v. Travelers Cos., Inc., 585 F.3d 1366, 1371 (10th Cir. 2009), it supports the more natural reading of the statute in this instance. Had Congress intended Leaverton's construction, it could have simply stated "voluntary manslaughter (as described in section 1112)." We also note that the subsection at issue includes other crimes to which parenthetical statutory references are not attached. See § 3559(c)(2)(F)(i) (including kidnapping, extortion, arson, and firearms use).

We read the statute as including within the definition of "serious violent felonies" the crime of "manslaughter" except involuntary manslaughter as described in § 1112. But this reading does not end our analysis. Congress has adopted the "general approach, in designating predicate offenses, of using uniform, categorical

definitions." Taylor v. United States, 495 U.S. 575, 590 (1990). Under this approach, we do not simply apply an enhancement to any crime designated by a state as "manslaughter." See id. Instead, we treat enumerated offenses as referring to the crime in "the generic sense in which the term is now used in the criminal codes of most States." Id. at 598. And to determine whether a state crime meets the generic definition, "we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition." Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (quotations omitted). "Accordingly, a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." Id. (quotation and alterations omitted).

As the Fourth Circuit has explained, states vary considerably in defining manslaughter. See United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011). We agree with that court that "the Model Penal Code provides the best generic, contemporary, and modern definition, particularly because it has been widely adopted." Id.; see also Taylor, 495 U.S. at 598 n. 8 (referring to the Model Penal Code ("MPC") definition of burglary); United States v. Gomez-Leon, 545 F.3d 777, 791 (9th Cir. 2008) (employing the MPC definition of manslaughter). The MPC defines "manslaughter" as a homicide "committed recklessly," or a homicide that would be murder except that it was "committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse." Model Penal Code § 210.3 (1962). It defines murder as a homicide

10

"committed purposely or knowingly" or "committed recklessly under circumstances manifesting extreme indifference to the value of human life." Id. § 210.2. A defendant acts "recklessly" if "he consciously disregards a substantial and unjustifiable risk" such as to constitute "a gross deviation from the standard of conduct that a law-abiding person would observe." Id. § 2.02(2)(c).

Although § 711(2) bears some similarity to the second definition provided in the MPC, the § 711(2) heat of passion element differs markedly from that applicable to generic manslaughter. As we have previously explained, the majority view holds that "heat of passion" does not "eliminate[] the requirement of an intentional or reckless killing." United States v. Serawop, 410 F.3d 656, 665 (10th Cir. 2005). Instead, it "explains, or reduces, what would otherwise be murder to manslaughter." Id. at 665 n.6. As the OCCA has similarly acknowledged, "[m]ost jurisdictions hold that first degree or voluntary manslaughter involves an intent to kill accompanied by the 'extenuating circumstance . . . that the defendant, when he killed the victim, was in a state of passion engendered in him by an adequate provocation.'" Brown v. State, 777 P.2d 1355, 1358 (Okla. Crim. App. 1989) (quoting W. LaFave & A. Scott, Jr., Substantive Criminal Law § 7.10, at 252 (1986)). The MPC definition tracks this majority view. See Model Penal Code § 210.3.

Oklahoma has adopted the "minority view which requires that the homicide be perpetrated 'without a design to effect death' to constitute first degree or voluntary manslaughter." Brown, 777 P.2d at 1358 (quoting § 711(2)). Under this approach, "the passion must be so great as to destroy the intent to kill," such that a defendant

11

lacks the "ability to form such an intent or perceive of a grave risk." Serawop, 410 F.3d at 665 n.6. Unlike generic manslaughter under a heat of passion theory, a conviction under § 711(2) requires that the defendant did not intend to kill.

Further, § 711(2) bears no resemblance to the reckless homicide theory of manslaughter set forth in the MPC. Oklahoma courts have held that second degree manslaughter, which applies when an individual kills through "culpable negligence," Okla. Stat. tit. 21, § 716, requires "reckless disregard for the safety of others," Lester v. State, 562 P.2d 1163, 1167 (Okla. Crim. App. 1977). But Oklahoma's first degree manslaughter statute makes no reference to recklessness. See Okla. Stat. tit. 21, § 711.

Based on the foregoing analysis, we cannot say that a conviction under § 711(2) "necessarily involved facts equating to" generic manslaughter.[2] Moncrieffe, 569 U.S. at 190 (quotation and alteration omitted). Accordingly, we conclude that

---

[2] Our conclusion differs from that of the Eighth Circuit, which recently held that § 711(2) qualifies as a crime of violence under the residual clause of the United States Sentencing Guidelines § 4B.1, because it "is almost identical to the federal crime of 'voluntary manslaughter.'" United States v. Steward, 880 F.3d 983, 988 (8th Cir. 2018). In reaching that conclusion, the Eighth Circuit acknowledged that Oklahoma's case law requires that "[t]he heat of passion must render the mind incapable of forming a design to effect death," but nevertheless disregarded this requirement, on the basis that it "has been interpreted to further emphasize the necessary level of passion." Steward, 880 F.3d at 988 n.5 (quotations omitted). In Serawop, however, our circuit explained that the minority view adopted in Oklahoma "is inconsistent with the common law as we have interpreted it." 410 F.3d at 665 n.6. Our panel is bound by this clear precedent, which reasoned that the minority and majority approaches are meaningfully distinct rather than merely different in emphasis.

12

Leaverton's offense does not constitute manslaughter as that term is used in § 3559(c)(2)(F)(i).[3]

## III

For the reasons set forth above, we **REVERSE** and **REMAND** to the district court for resentencing.

---

[3] For the first time on appeal, the government argues that Leaverton's prior conviction qualifies under § 3559(c)(2)(F)(ii) as an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. Although this court has discretion to consider new arguments for the first time on appeal, Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1130 (10th Cir. 2016), we decline to do so. Given the complexity of the issue, we think it better to permit the parties to fully brief the question and to permit the district court to rule in the first instance.