FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL JACKSON WINROW,

Defendant - Appellant

No. 21-6069

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:19-CR-00394-PRW-1)**

---

Leah Deborah Yaffe, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, and Shira Kieval, Assistant Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Stanley J. West, Assistant United States Attorney (Robert J. Troester, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff-Appellee.

---

Before **HARTZ**, **SEYMOUR,** and **MORITZ,** Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

Michael Winrow pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  At the time of Mr. Winrow's offense, this crime was ordinarily

subject to a maximum sentence of 10 years.  18 U.S.C. § 924(a)(2) (2018).  However, the

Armed Career Criminal Act provided for a minimum term of 15 years when a defendant

had three prior convictions for a "violent felony or a serious drug offense," 18 U.S.C.

§ 924(e)(1) (2018).  The district court sentenced Mr. Winrow to 188 months, concluding

that he was subject to the ACCA's enhancement because he had three qualifying

predicates.  Mr. Winrow contends that this was error.  Two of those convictions were for

aggravated assault and battery under Okla. Stat. tit 21, § 646 (2011).  He asserts that

aggravated assault and battery, as Oklahoma defines it, is not categorically a violent

felony, so his convictions under § 646 should not have counted as predicates.  We agree.

# I
## Legal Background

Under the ACCA's "elements clause," sometimes called the "force clause," a

felony conviction qualifies as a "violent felony" if it "has as an element the use,

attempted use, or threatened use of physical force against the person of another."  18

U.S.C. § 924(e)(2)(B)(i).  The force must be "violent," that is, it must involve "force

capable of causing physical pain or injury to another person."  *Johnson v. United States*,

559 U.S. 133, 140 (2010).  In determining whether a conviction qualifies as an ACCA

predicate, courts take a "categorical approach," focusing on the elements of the offense in

the abstract, rather than the particulars of the conduct that led to the defendant's

conviction.  *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017).

### A.    The Categorical and Modified Categorical Approaches

Under the categorical approach, a conviction qualifies as a predicate only if the elements of the offense *necessarily* satisfy the ACCA definition. *Id*. at 1266 (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)). Accordingly, we look to the least acts criminalized by statute. If the statute "realistically reaches any conduct that does not involve the use of physical force against another person, then a conviction under [the statute] does not qualify as a violent felony under the ACCA's element's clause." *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). The test is all or nothing. Either any conviction under the statute will qualify, or none will. *Titties*, 852 F.3d at 1265–66.

Courts employ the "modified categorical approach" when the prior conviction is based on a so-called "divisible" statute, that is when the statute sets out one or more elements of the offense in the alternative. *Id.* at 1266 (citing *Descamps*, 570 U.S. at 257). When a statute has alternative elements, no one could know from the face of the statute alone which version of the offense a defendant has been convicted of, rendering a categorical comparison of elements impossible. *Id.* To get around this problem, courts may consult certain record documents to determine which elements formed the basis of the defendant's offense. *Id.* Once the applicable elements are identified, we proceed with the categorical approach in the usual manner. *Id.* at 1267.

3

**B.      Divisibility: The Means/Elements Distinction**

Before resorting to the modified categorical approach, a court's first task is to determine whether the statute is truly divisible.  If it is not, the modified categorical approach has no role to play.  *Id.* at 1267.  A statute is only divisible if the alternative terms are "elements" of different offenses, rather than merely "means" of committing the same offense.  *Id.* (citing *Mathis v. United States*, 579 U.S. 500, 517 (2016)).  "Elements" are the "constituent parts" of a crime's legal definition.  *Mathis*, 579 U.S. at 504.  At trial, they are the things a jury must find beyond a reasonable doubt; at a plea hearing, they are what the defendant necessarily admits when he pleads.  *Id*.  "Means," by contrast, merely describe different factual ways of committing a single element.  *Id.* at 506.  Critically, means are "legally extraneous"; a jury need not agree on the means by which a defendant's conduct satisfies an element, so long as they agree that the element is satisfied.  *Id* at 506.  If the alternatives are means, we must apply the categorical approach to the statute as a whole.

**II**
**Standard of Review**

We review de novo the district court's conclusion that Mr. Winrow's convictions for aggravated assault and battery are predicates under the ACCA.  *United States v. Degeare*, 884 F.3d 1241, 1245 (10th Cir. 2018).  The government bears the burden of showing these convictions qualify.  *Titties*, 852 F.3d at 1264–65.

4

### III
### Discussion

The statute under which Mr. Winrow was convicted provides, in relevant part, as follows:

§ 646.  Aggravated assault and battery defined

A.  An assault and battery becomes aggravated when committed under any of the following circumstances:

1.When great bodily injury is inflicted upon the person assaulted; or

2.  When committed by a person of robust health or strength upon one who is aged, decrepit, or incapacitated . . . .

Okla. Stat. tit 21, § 646.

Mr. Winrow argues that § 646(A)(1) and § 646(A)(2) describe alternative means of committing a single offense so the statute is indivisible and must be evaluated as a whole using the pure categorical approach.  He further argues that, under Oklahoma law, a person of robust health could commit an aggravated assault and battery by committing the slightest unlawful touching of an elderly person.  Since committing the offense in this way would require no violent force, he contends, it is not categorically a violent felony for the purposes of the ACCA.

The government takes the opposite view, arguing that each subsection establishes a legally distinct crime—the first turning on the degree of injury, the second on the status of the victim and perpetrator.  The government contends that the former satisfies the elements clause, and that Mr. Winrow was convicted under this alternative.  And even if the statute is indivisible, the government argues, aggravated assault and battery still

5

qualifies as a violent felony because both alternatives require the use of physical force against the victim.

## A.    Divisibility

Our first task is to determine whether the statute is divisible, that is, whether its alternatives are means or elements. *Mathis* identified three tools at our disposal in conducting this inquiry. First, a state court decision may provide the answer by, for example, specifying which elements require unanimous jury agreement. *Mathis*, 579 U.S. at 517–18. Second, the statute itself may provide the answer, such as by tying the alternatives to different punishments. *Id.* at 518. Finally, when the first two tools do not resolve the matter, a court can take a "peek" at the record of the prior conviction, but only for the "limited purpose of determining whether [the listed items are] element[s] of the offense." *Id.* at 518 (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (alterations in original)). As explained further below, none of these tools resolve the question of divisibility with certainty in this case.

### 1.    State Decisions

The Oklahoma Court of Criminal Appeals appears never to have considered a challenge to a § 646 conviction based on a lack of jury unanimity or double jeopardy, the two sorts of cases most likely to resolve the divisibility issue. And the cases cited by the parties do little to move the needle one way or the other.

In *Herrington v. State*, cited by Mr. Winrow, the defendant was charged with a single count of aggravated assault and battery after allegedly "flip[ping]" a baby in its

6

crib, leaving his face "bruised and swollen." 352 P.2d 931, 932 (Okla. Crim. App. 1960).

At trial, the jury convicted him based on a jury instruction that included both the injury-based alternative and the health-status alternative. On appeal, the OCCA reversed, concluding that the evidence did not support a conviction under either theory. The baby's injuries did not rise to the level of "great bodily injury" for the purposes of the first alternative, and his status as an infant did not make him decrepit or incapacitated for the purposes of the second. *Id.* at 934.

Mr. Winrow argues *Herrington* "strongly suggests" that § 646 provides alternative means because the jurors were instructed on each prong with no indication that they were also instructed that they had to agree unanimously on one alternative or the other. Aplt. Br. at 11. This overstates the case. For one, we do not know whether or not there was a unanimity instruction. The case is silent in that regard. For another, the defendant never raised the issue of juror unanimity, so we can only speculate as to how the OCCA would have held if he had.

*Porter v. State*, 611 P.2d 278 (Oka. Crim. App. 1980), on which the government relies, is similarly unhelpful. In *Porter*, the defendant, having been convicted of assault and battery with a dangerous weapon, argued on appeal that the trial court should have granted his request for an instruction on the allegedly lesser included offense of aggravated assault and battery. *Id.* at 279. The court rejected this assertion. Noting that a crime only qualifies as a lesser included offense if its commission is necessarily included in the commission of the charged offense, the court reasoned that aggravated assault and

7

battery could not be a lesser included offense of assault and battery with a dangerous weapon because the former required proof of "great bodily injury to the victim or an attack by one of robust health on one who is decrepit, neither of which is an *element* of Assault and Battery with a Dangerous Weapon." *Id.* at 280 (emphasis added).

According to the government, *Porter* shows that § 646's alternatives are elements because the lesser included offense analysis turns on the elements of the offenses at issue. This too overstates the case. Although the court referred to § 646's alternatives as elements and perhaps even assumed they were for the purpose of its analysis, the court never had to decide the issue. Neither alternative was an element of assault and battery with a dangerous weapon, so it did not matter whether § 646 established two offenses or a single offense that could be committed in two ways. In either case, the defendant was not entitled to a lesser included offense instruction. Again, because the case did not have to confront the means/elements distinction, it cannot be treated as dispositive. *See United States v. Hamilton*, 889 F.3d 688, 694 (10th Cir. 2018).

### 2.    Statutory Structure and Language

With respect to the second tool in our belt, *Mathis* describes three ways a statute may "on its face" resolve the means/elements question. *Degeare*, 884 F.3d at 1253 (citing *Mathis*, 579 U.S. at 518). First, the alternatives may be tied to different punishments, in which case they must be treated as elements. *Mathis*, 579 U.S. at 518. Second, the alternatives may be listed as illustrative examples, making them means. *Id.* And finally, the statute may itself identify the components that must be charged (making

them elements) and the components that need not be (making them means). *Id.* Oklahoma's aggravated assault and battery statute bears none of these features. Nevertheless, both parties attempt to bolster their positions by pointing to other aspects of the statute's structure. None are compelling.

Mr. Winrow contends that the title of § 646, "aggravated assault and battery," is an "umbrella term," which indicates that the alternatives are means. This argument has no merit. Although we have held that a statute's use of an "umbrella term" may be indicative of means, *see Hamilton,* 889 F.3d at 696, § 646's title does not qualify. An "umbrella term" is a broad term "that encompasses the other terms in a series." *Id.* When a list of alternatives includes a generic term that encompasses more specific alternatives in the list, this suggests that the specific terms are merely illustrative examples and therefore are means. *See id.* (citing *Mathis*, 579 U.S. at 518). Here, the alleged umbrella term is not a general term that encompasses more specific terms in a series, it is the title of the code section itself. And the alternatives are not illustrative examples of a more general element; they describe the only two circumstances, each fundamentally different from the other, under which an assault and battery becomes an aggravated assault and battery. Mr. Winrow cites no case in which we used the phrase "umbrella term" in this way, much less in which we held that such a structure indicates a statute's alternatives are means.

The government's argument makes for similarly watery soup. According to the government, we should view § 646's alternatives as elements because the drafters placed

9

each one in its own subsection.  We have been inconsistent on this point.  Although we have sometimes held that subsections are supportive of divisibility, *see United States v. Wilkins*, 30 F.4th 1198, 1206 & n.6 (10th Cir. 2022), we have also declined to give the existence of subsections any weight, *see Degeare*, 884 F.3d at 1253.  We are particularly hesitant to put any stock in this stylistic choice here because the OCCA has deemed the alternatives in similarly structured statutes to be means rather than elements, despite the drafters' use of separate subsections.  *See id.* at 1253–54 (citing *Bruner v. State*, 612 P.2d 1375, 1380 (Okla. Crim. App. 1980); *Crawford v. State*, 840 P.2d 627, 640 (Okla. Crim. App. 1992), *abrogated on other grounds by Malone v. State*, 168 P.3d 185 (Okla. Crim. App. 2007)).

### 3.      Model Jury Instructions and Record Materials

Having concluded that neither Oklahoma's case law nor the text or structure of the statute resolves the divisibility question, we must look to the relevant record materials to see if they "speak plainly" on the matter.  *Degeare*, 884 F.3d at 1254 (quoting *Mathis*, 579 U.S. at 518).  If the charging document and jury instructions reiterate the statutory alternatives, this "is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* (quoting *Mathis*, 579 U.S. at 519).  Conversely, by referencing one alternative term to the exclusion of all others, the documents could indicate that the statute contains a list of elements, each of which goes toward a different crime.  *Mathis*, 579 U.S. at 519.  In making this inquiry, we may consider "conclusive records made or

10

used in adjudicating guilt," such as the charging document, jury instructions, or a plea

agreement. *United States v. Abeyta*, 877 F.3d 935, 942 (10th Cir. 2017) (quoting *Shepard*

*v. United States*, 544 U.S. 13, 21 (2005)). When, as here, no jury instructions exist

because the defendant did not go to trial, we also apply these principles to the state's

uniform pattern jury instructions. *See Degeare*, 884 F.3d at 1254 n.6.

 i.  *Uniform Jury Instructions*

Oklahoma has created a different pattern jury instruction for each of the

alternatives in § 646, one for "Aggravated Assault and Battery Aged or Decrepit Victim"

and another for "Aggravated Assault and Battery Great Bodily Injury Inflicted." OUJI-

CR 4-23, 4-24. And each of them describes its own set of "elements" that must be

proven beyond a reasonable doubt. When alternatives are given their own jury

instructions in this way, we have held it to indicate that the alternatives are different

elements. *Degeare*, 884 F.3d at 1256; *United States v. Leaverton*, 895 F.3d 1251, 1255

(10th Cir. 2018); *United States v. Pam*, 867 F.3d 1191, 1205 (10th Cir. 2017), *abrogated*

*on other grounds by Borden v. United States*, 141 S. Ct. 1817 (2021).

 That said, in the present case we do not view the jury instructions as authoritative

on this point. As Mr. Winrow points out, Oklahoma has separate instructions for malice-

aforethought murder and felony murder, *see* OUJI-CR 4-61, 4-64, yet the OCCA has

unambiguously held malice-aforethought murder and felony murder to be merely two

means of committing the single crime of first-degree murder. *See Crawford*, 840 P.2d at

639. We therefore view the existence of separate instructions as indicative of divisibility but not dispositive in this case.

    *ii.       Other Documents*

The available record documents send mixed signals. On one hand, the informations, plea documents, and judgments cite Mr. Winrow's offense generically as "aggravated assault and battery" and cite "21 O.S. § 646," rather than describing the particular variety of assault and battery and its corresponding subsection. *See*, *e.g.*, Aplt. Br., Attach. C-1, C-7, C-16, C-20, C-22, C-25, C-28, C-33. Arguably, the use of a generic heading, rather than one that specifies the applicable alternative, indicates that the statute is indivisible because it suggests that the state treats the statute as establishing a single, unified offense. *See Wilkins*, 30 F.4th at 1208.

On the other hand, *Mathis* makes clear that the heart of the means/elements inquiry concerns the substance of the allegations against the defendant and the factual basis of his guilty plea, not the headings under which those facts appear. And in this case, those aspects of the charging and plea documents seem to point to divisibility. One information alleges the infliction of "bodily injury," the other of "great bodily injury," and that language is echoed in the factual admissions Mr. Winrow made in the corresponding plea documents. *See* Aplt. Br., Attach. C-1, C-8, C-20, C-37. None of the documents mention Mr. Winrow's "robust health" or the decrepitude of his victims. Because the documents reference only one alternative, rather than reiterate both, this

"could indicate" the alternatives are elements, each one going toward a separate crime. *See Mathis*, 579 U.S. at 519.

That said, as Mr. Winrow reminds us, Oklahoma requires an information to include not only the elements of a crime, but also "enough facts to enable a defendant to prepare for trial." *United States v. Johnson*, 911 F.3d 1062, 1072 (10th Cir. 2018) (citing *Ross v. State*, 147 P.2d 797, 799 (Okla. Crim. App. 1944)). Accordingly, we have held that the selection of one alternative in an Oklahoma charging document does not necessarily mean that the statutory alternatives are elements. *Id.* (citing *Hamilton*, 889 F.3d at 698). Thus, it is unclear how much significance we should ascribe to the absence of any allegations regarding Mr. Winrow's health or that of his victims. This, in turn, casts doubt on any conclusions that might otherwise be drawn from the factual stipulations made in the plea documents. It seems logical that if an information alleges only one alternative, then that is the alternative the defendant will admit to having committed when he pleads guilty. *Cf. Mathis*, 579 U.S. at 531 (Breyer, J., dissenting) (explaining that, when a prosecutor alleges only one alternative, that is the fact that must be proven to the jury, whether or not the alternative is an element or a means).

In the end, the ambiguity of the record materials requires us to resolve the issue of divisibility in Mr. Winrow's favor. When neither the statute nor state law shows that the statute's alternatives are elements, and the record materials do not speak "plainly," we must treat the statute as indivisible and proceed under the standard categorical approach. *Degeare*, 884 F.3d at 1258 (citing *Mathis*, 579 U.S. at 519).

13

**B.     Application of the Categorical Approach**

Having concluded that Oklahoma's aggravated assault and battery statute is indivisible, the question becomes whether "it can be violated without the 'use, attempted use, or threatened use of physical force.'" *Titties*, 852 F.3d at 1273 (quoting § 924(e)(2)(B)(i)). We find persuasive Mr. Winrow's argument that a person could violate § 646's status-based alternative, § 646(A)(2), without using the kind of force necessary for the offense to qualify as a violent felony.

Violation of § 646(A)(2) requires proof of (1) an assault and battery, (2) upon another person who is aged decrepit, or incapacitated, (3) by a person of robust health or strength. OUJI-CR 4-24. And Oklahoma defines assault and battery as the willful, unlawful, use of force or violence upon another person. OUJI-CR 4-26 (citing 21 Okla. Stat. tit 21, §§ 641, 642). Of critical importance here, the OCCA has held that "only the slightest touching is necessary to constitute the 'force or violence' element of battery." *Steele v. State*, 778 P.2d 929, 931 (Okla. Crim. App. 1989). Thus, since it is possible to commit a simple assault and battery by way of the slightest touch, it is also possible to commit an aggravated assault and battery by way of the slightest touch, provided the perpetrator is a person of "robust health or strength" and the victim is "aged, decrepit, or incapacitated." § 646(A)(2). Since a slight touch is not "force capable of causing physical pain or injury to another person," *see Johnson*, 559 U.S. at 140, aggravated

14

assault and battery as defined by Oklahoma is not categorically a violent felony for the purposes of ACCA and cannot serve as the predicate for an enhanced sentence.[1]

The government resists this conclusion, arguing that an aggravated assault and battery requires not only a battery, but also an assault, which Oklahoma defines as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt on another." Aple. Br. at 29 (quoting Okla. Stat. tit. 21, § 641). The government contends that when the terms "corporal" and "hurt" are given their ordinary meaning, an assault therefore "requires an offer or attempt to cause bodily pain or injury by the use of force or violence." *Id.* at 30 (citing *Webster's New Universal Unabridged Dictionary* 409, 887 (2d ed. 1972)). The government reasons that, because aggravated assault and battery requires an assault, and assault requires "an attempt or threat to cause bodily pain or injury using force or violence," it follows that the crime of aggravated assault and battery has as an element "the attempted use or threatened use of physical force against the person of another," making it a violent felony for the purposes of the ACCA. *Id.* This argument fails for two reasons.

First, the government's argument presupposes that an "assault and battery" is somehow different than a "battery," but Oklahoma treats them as single crime with two different names. This is evidenced by the state's pattern jury instructions. Although each

---

[1] Our conclusion obviates any need to analyze whether it is possible to violate the injury-based alternative without the use of physical force. An indivisible statute is not categorically a violent felony unless all of its alternatives satisfy the force requirement. *See Degeare*, 884 F.3d at 1258.

offense is given its own pattern jury instruction, both instructions list identical elements and neither one requires proof of an offer or attempt to cause a "corporal hurt." OUJI-CR 4-3, 4-26. Moreover, the OCCA appears to have used the terms "battery" and "assault and battery" interchangeably in *Steele*. Although the court referred only to "battery" when announcing its holding, the defendant in that case had been convicted of "assault and battery," and the court cited several cases that likewise described the crime in question as "assault and battery." *See Steele,* 778 P.2d at 930. Thus, *Steele*'s holding seems to be applicable to both "battery" and "assault and battery," as we have implicitly held on two occasions. *See United States v. Johnson*, 911 F.3d 1062, 1072 (10th Cir. 2018); *United States v. Smith*, 652 F.3d 1244, 1247 (10th Cir. 2011). As a result, notwithstanding the statutory definition of assault, it is clear that a person can commit assault and battery by way of a slight touching.

Second, even if we were to import the statutory definition of "assault" into the offense of "assault and battery," it would make no difference because the degree of force necessary to commit an assault is no different than that necessary to commit a battery. Indeed, we have previously read *Steele*'s holding as applicable to battery *and* assault. *See United States v. Taylor*, 843 F.3d 1215, 1223 (10th Cir. 2016).

This conclusion flows from the common law concepts from which Oklahoma's assault and battery statutes were drawn. As we explained in *United States v. Mason*, which we find persuasive, the phrase "corporal hurt" is a common law term of art understood to include the mere touching of another's person. *See* 709 F. App'x 898,

16

905–06 (10th Cir. 2017) (unpublished).  And battery was sometimes described as "'[t]he actual infliction of corporal hurt on another (e.g., the least touching of another's person), willfully or in anger, whether by the party's own hand or by some means set in motion by him.'"  *Id.* (alteration in original) (quoting *Lynch v. Commonwealth*, 131 Va. 762, 109 S.E. 427, 428 (1921)).  This is consistent with the common law idea, retained in Oklahoma, that an assault consists of either (1) "an attempt to commit a battery," or (2) "the intentional placing of another in apprehension of receiving an immediate battery."  OUJI-CR 4-26, Committee Comments; *see also Minnix v. State*, 282 P.2d 772, 776 (Okla. Crim. App. 1955).  It is also consistent with the rule that every consummated battery in Oklahoma necessarily includes an assault.  *Hall v. State*, 309 P.2d 1096, 1100 (Okla. Crim. App. 1957).  The government's reading of "corporal hurt" flouts this understanding.  A person who willfully touches another slightly, but nevertheless unlawfully, has committed a simple battery in Oklahoma.  *See Steele*, 778 P.2d at 931.  But he has not necessarily committed an assault if, as the government contends, an assault requires an attempt or offer to cause bodily injury.

Rather than confront the common law meaning of "corporal hurt," the government argues that we should abandon it because Oklahoma courts must "construe statutes in derogation of the common law liberally and interpret them in their ordinary meaning."  Aple. Br. at 36 (quoting *Terry v. Edgin,* 598 P.2d 228, 233 (Okla. 1979)).  The problem with this argument is that there is no indication that the statute is in any way a derogation of the common law.  On the contrary, Oklahoma courts have repeatedly interpreted the

17

statute in ways consistent with the common law definition of assault. *See, e.g.*, *Minnix*, 282 P.2d at 775; OUJI-CR 4-26, Committee Comments (explaining that Oklahoma's statute conserves the two common law definitions of assault). Accordingly, even if proof of "assault and battery" required evidence of an assault, i.e., an attempt to do a corporal harm, we would read corporal harm to mean any touching of another's person, no matter how slight. As a result, it would still be possible to violate § 646 without the use, attempted use, or threatened use of force. A conviction under the statute is therefore not categorically a violent felony and cannot serve as a predicate offense for the purposes of the ACCA.

## IV
## Conclusion

Mr. Winrow received an unlawful sentence. Aggravated assault and battery in Oklahoma is not categorically a violent felony, so his convictions under Okla. Stat. tit. 21, § 646 should not have counted as ACCA predicates. Without them, he lacked the three predicates necessary for the enhanced, 188-month sentence he received.

We therefore REMAND this matter with instructions that Mr. Winrow's sentence be vacated and that he be resentenced without the ACCA enhancement, in conformity with the relevant statutory maximum.