**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

v.

JARED ROBERT FAULKNER,

     Defendant – Appellant.

No. 18-7066

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:18-CR-00052-RAW-1)**
_____

Barry L. Derryberry, Assistant Federal Public Defender (Julia L. O'Connell, Federal Public Defender, and Robert S. Williams, Assistant Federal Public Defender, with him on the briefs), Tulsa, Oklahoma, for Defendant – Appellant.

Linda A. Epperley, Assistant United States Attorney (Brian J. Kuester, United States Attorney, and Gregory Dean Burris, Assistant United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff – Appellee.
_____

Before **HOLMES**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Following his conviction of being a felon in possession of a firearm, Jared

Faulkner failed to object to the Presentence Investigation Report's ("PSR")

conclusion that his prior Oklahoma felony of endeavoring to manufacture methamphetamine qualified as a predicate "controlled substance offense" for purposes of base offense level computation. As a result, the district court adopted the PSR in full and sentenced Mr. Faulkner to a guidelines-range, 96-month term of imprisonment.[1]

On appeal, Mr. Faulkner asserts the district court plainly erred by finding that his prior conviction qualified as a "controlled substance offense" as that term is defined by the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm.

## I.    BACKGROUND

At the conclusion of a two-day trial, a jury convicted Mr. Faulkner on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Mr. Faulkner's PSR calculated his base offense level as 20, counting his prior Oklahoma conviction for endeavoring to manufacture methamphetamine as a "controlled substance offense." ROA, vol. III, at 3.[2] The PSR applied an additional two-level enhancement because the subject firearm had been reported stolen. Combining his total offense level of 22 with his criminal history category of VI

---

[1] The district court further imposed a three-year term of supervised release, which Mr. Faulkner does not challenge on appeal.

[2] Volume III of the record on appeal is not separately paginated. All cites to that volume refer to the pagination used in the PSR.

yielded an advisory sentencing range of 84–105 months. The district court adopted

the PSR in full without objection and sentenced Mr. Faulkner to a term of 96 months'

imprisonment.

## II.    ANALYSIS

Under Federal Rule of Criminal Procedure 52(b), "[a] plain error that affects

substantial rights may be considered even though it was not brought to the court's

attention." Because Mr. Faulkner raised no objection in the district court, he can

prevail on appeal "only if (1) an error occurred; (2) the error was plain; (3) the error

affected [his] substantial rights; and (4) the error seriously affected the fairness,

integrity, or public reputation of a judicial proceeding." *United States v. Jereb*, 882

F.3d 1325, 1335 (10th Cir. 2018) (quotation marks omitted). At oral argument, the

government conceded that prongs three and four would be met if Mr. Faulkner could

establish the first two prongs.[3] Thus, we analyze only whether the district court

committed error that was plain.

### A. *Whether the District Court Erred*

Prior to his current offense, Mr. Faulkner was convicted in Oklahoma state

court of endeavoring to manufacture methamphetamine in violation of Okla. Stat. tit

---

[3] If Mr. Faulkner's base offense level arguments are correct, he should have been sentenced under a 46–57-month Guidelines range rather than the 84–105-month range computed by the district court. *See* U.S.S.G. § 2K2.1(a)(6), (b)(4)(A). The government's concession is presumably predicated on the now well-established principle that a plain error leading to the adoption of an incorrect, higher Guidelines range will ordinarily satisfy plain error review's third and fourth prongs. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018); *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016).

63, § 2-408. Under that statute, "[a]ny person who offers, solicits, attempts, endeavors, or conspires to commit any offense defined in the Uniform Controlled Dangerous Substances Act . . . shall be subject to the penalty prescribed for the offense, the commission of which was the object of the offer, solicitation, attempt, endeavor or conspiracy." Okla. Stat. tit. 63, § 2-408.

Section 2K2.1(a)(4)(A) of the Guidelines directs a sentencing court to apply a base offense level of 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense." The Guidelines define "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).[4]

Application Note 1 to § 4B1.2 clarifies that "'controlled substance offense' include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." § 4B1.2 cmt. n.1. And Application Note 2 to the Guidelines' general application principles instructs that the Guidelines' use of "[t]he term 'includes' is not exhaustive." U.S.S.G. § 1B1.1 cmt. n.2. Relying on this principle, we have held that "solicitation" is a crime of violence under § 2L1.2(b)(1)(A)(ii) notwithstanding

---

[4] Although § 4B1.2, by its own terms, supplies definitions for "terms used in Section 4B1.1," § 2K2.1 provides that "'[c]ontrolled substance offense' has the same meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 cmt. n.1.

4

the absence of that term in an application note to § 2L1.2, a provision that is indistinguishable from Note 1 to § 4B1.2. *See United States v. Cornelio-Pena*, 435 F.3d 1279, 1284 (10th Cir. 2006) ("Thus, by using the term 'include' in the application note, the Commission clearly expressed its intent that the offenses listed in the note were not exhaustive, and we do not apply *expressio unius est exclusio alterius*."); *see also United States v. Shumate*, 329 F.3d 1026, 1030 (9th Cir. 2003) (applying the same analysis to conclude that solicitation offenses are included in § 4B1.2). Thus, a state offense is not removed from the ambit of the Guidelines' definition of "controlled substance offense" merely because it does not appear among the enumerated offenses.

Rather, "[w]e apply a categorical/modified categorical analysis to determine whether [a defendant's] prior . . . conviction qualifies as a 'controlled substance offense' under U.S.S.G. § 4B1.2(b)." *United States v. McKibbon*, 878 F.3d 967, 971 (10th Cir. 2017). Under the categorical approach, "our focus is on the elements of the statute of conviction and not [on] the particular facts underlying that conviction." *Id.* at 972 (alteration in original) (internal quotation marks omitted). The state crime of conviction will qualify as a controlled substance offense only if it criminalizes no more conduct than the offenses listed in the Guidelines.

The categorical approach "requires application of both federal . . . and state law." *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). "[S]tate law defines the substantive elements of the crime of conviction." *Id.* By contrast, federal courts are tasked with ascertaining the "generic, contemporary meaning" of

5

undefined offenses enumerated in the Guidelines. *See United States v. Rivera-Oros*, 590 F.3d 1123, 1126 (10th Cir. 2009) (quoting *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

Because we are confronted with a disjunctively phrased statute, we begin by analyzing whether the modified categorical approach is appropriate. *See United States v. Abeyta*, 877 F.3d 935, 940 (10th Cir. 2017) ("In applying the categorical approach, a court must determine whether the *modified* categorical approach is appropriate."). We apply the modified categorical approach when the state statute is divisible—"i.e., if it contains more than one crime." *United States v. Degeare*, 884 F.3d 1241, 1246 (10th Cir. 2018) (internal quotation marks omitted). Under the modified categorical approach, we compare the elements of the defendant's precise crime of conviction to the Guidelines' definition and disregard the alternatives enumerated in the statute. *See United States v. Titties*, 852 F.3d 1257, 1266 (10th Cir. 2017).

But a statute is divisible and therefore subject to the modified approach only if it lists elements, rather than means, in the alternative. *Id.* at 1267. Thus, our first task is "to determine whether its listed items are elements or means." *Abeyta*, 877 F.3d at 941 (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016)). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). "The means, however, 'are mere real-world things— extraneous to the crime's legal requirements.'" *Abeyta*, 877 F.3d at 941 (quoting

6

*Mathis*, 136 S. Ct. at 2248). "There are three general tools courts use to decide whether listed items in an alternatively phrased criminal law are elements or means: (1) the statutory text; (2) state court decisions; and (3) the record of the prior conviction itself." *Id.*

Relying primarily on the statutory text,[5] the government asserts that Okla. Stat. tit. 63, § 2-408 is divisible; that offering, soliciting, attempting, endeavoring, and conspiring each constitute separate crimes. Mr. Faulkner offers no response, presumably because the divisibility determination does not affect his argument on appeal. Indeed, he argues that the crime of conviction (endeavoring), and not the purportedly divisible alternatives listed in § 2-408, is broader than the Guidelines' definition of a controlled substance offense—precisely the analysis conducted under the modified categorical approach.[6] In light of this posture, and without more fulsome, adversarial briefing, we assume without deciding that the statute is divisible and apply the modified categorical approach, examining only whether Oklahoma's crime of endeavoring to manufacture a controlled dangerous substance sweeps more broadly than the inchoate offenses enumerated in the Guidelines.

The parties apparently agree that of the offenses listed in Application Note 1 to § 4B1.2—"aiding and abetting, conspiring, and attempting"—endeavoring's closest

---

[5] The government also cites to federal habeas cases involving convictions under § 2-408, but our divisibility inquiry looks to state, not federal, court decisions.

[6] At oral argument, Mr. Faulkner's counsel answered in the affirmative when asked to confirm that he was "not questioning that [the Oklahoma] statute is divisible." Oral Argument at 29:30–29:37.

analogue is "attempting." Thus, we must analyze whether the Oklahoma crime of endeavoring is no broader than the generic definition of attempt.

Mr. Faulkner's principal argument is that a conviction for endeavoring to manufacture methamphetamine can be sustained on much more incipient acts than those required to convict for generic attempt. We first review Oklahoma law to define the elements of endeavoring before describing the elements of generic attempt.

### 1. The Elements of Oklahoma's Endeavoring Statute

Under Okla. Stat. tit 63, § 2-408, "[a]ny person who offers, solicits, attempts, endeavors, or conspires to commit any offense defined in the Uniform Controlled Dangerous Substances Act . . . shall be subject to the penalty prescribed for the offense, the commission of which was the object of the offer, solicitation, attempt, endeavor or conspiracy."

In Oklahoma, "when a jury must be instructed on a certain subject, the relevant uniform instruction 'shall be used unless the [trial] court determines that it does not accurately state the law.'" *Flores v. State*, 896 P.2d 558, 560 (Okla. Crim. App. 1995) (alteration in original) (quoting *Fontenot v. State*, 881 P.2d 69, 84 (Okla. Crim. App. 1994)). Thus, Oklahoma's uniform jury instructions are particularly useful in identifying the elements necessarily found by an Oklahoma jury to convict of endeavoring to manufacture a controlled dangerous substance. *See United States v. Madkins*, 866 F.3d 1136, 1146 (10th Cir. 2017) (relying on Kansas's pattern jury instructions to define an element of the state crime of conviction).

8

To convict under Okla. Stat. tit 63, § 2-408, a jury must find the following elements:

First, **knowingly/intentionally**;

Second, **offering/soliciting/attempting/endeavoring/conspiring**;

Third, to manufacture;

Fourth, the controlled dangerous substance of [**Name of Substance**]. Oklahoma Uniform Jury Instructions ("OUJI"), OUJI-CR 6-3B. Oklahoma's uniform jury instructions define endeavoring as "any effort to do or accomplish the evil purpose that the law was enacted to prevent." OUJI-CR 6-16.

In sum, the Oklahoma crime of endeavoring to manufacture a controlled dangerous substance is complete when a defendant knowingly or intentionally exerts "any effort" to manufacture a controlled dangerous substance.

## 2. The Elements of Generic Attempt

Section 4B1.2(b) does not define attempt, and so we must formulate a generic definition by reference to "a wide range of sources . . . , including federal and state statutes, the Model Penal Code, dictionaries, and treatises." *United States v. Mendez*, 924 F.3d 1122, 1125 (10th Cir. 2019) (quotation marks omitted).

Under federal law, "attempt [generally] requires both (1) an intent to commit the substantive offense, and (2) the commission of an act which constitutes a substantial step towards commission of the substantive offense." *United States v. Gordon*, 710 F.3d 1124, 1150 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted). "A substantial step must be something more than mere

9

preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *Id.* (quotation marks omitted). "[A] substantial step is appropriately found where the defendant undertook an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of [a] particular crime." *Id.* at 1151 (alterations in original) (internal quotation marks omitted).

> Under the Model Penal Code,
>
> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he: . . . purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

Model Penal Code § 5.01(1)(c). The Code goes on to explain that "[c]onduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose." *Id.* § 5.01(2). And the Code's explanatory note highlights the necessity of "distinguish[ing] between acts of preparation and a criminal attempt." *Id.* § 5.01(1) cmt. to Subsection (1). Professor LaFave notes that "[t]he Model Penal Code's 'substantial step' language is to be found in the great majority of the attempt statutes in the modern recodifications." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.4(e) (3d ed. 2017) (collecting twenty-three state attempt statutes incorporating the "substantial step" requirement). And "[e]ven in the absence of such a statute, the courts in several jurisdictions have adopted the Model Penal Code 'substantial step' approach." *Id.*

10

Finally, under Oklahoma law,[7] juries must find the following elements to convict on an attempt charge:

> First, the **defendant(s)** formed the specific intent to commit the crime of **[Underlying Felony]**;
>
> Second, the defendant(s)
>
> . . . .
>
> Performed a perpetrating act or acts toward committing the crime of **[Underlying Felony]** but **(such act(s) failed to constitute the commission of)/(defendant(s) was/were prevented from committing)/(defendant(s) was/were intercepted in the perpetration of)** that crime.

OUJI-CR 2-11. Oklahoma's uniform jury instructions define a "perpetrating act" as:

> [O]ne that would end in the commission of the crime the **defendant(s)** intended to commit, but for the intervention of circumstances independent of the will of the **defendant(s)**. The requirement that the **defendant(s)** commit a perpetrating act must be distinguished from mere preparation to commit a crime. Preparation consists of devising or arranging the means or measures necessary for the commission of a crime.

OUJI-CR 2-12.

With minor variations, each of these formulations of attempt consists of (1) the intent to commit the underlying crime, and (2) an actus reus (a "substantial step" under federal law and the Model Penal Code, and a "perpetrating act" under

---

[7] To reiterate, the Guidelines' definition of "attempt" is not governed by state law, but state law informs our formulation of the generic definition. We look to Oklahoma law here because it serves the additional purpose of illustrating the distinctions drawn by Oklahoma law between attempt and endeavor, discussed more fully below.

11

Oklahoma law) of such magnitude as to distinguish the conduct from "mere preparation."

### 3. The Categorical Analysis Between Endeavoring and Attempt

Mr. Faulkner argues that the actus reus required to convict under Oklahoma's endeavoring statute ("any effort to do or accomplish the evil purpose that the law was enacted to prevent") encompasses more conduct than the generic definition of attempt, which excludes acts amounting to "mere preparation."

Mr. Faulkner's argument is bolstered considerably by a decision of the Oklahoma Court of Criminal Appeals (the "OCCA")[8] rejecting a void-for-vagueness challenge to Okla. Stat. tit. 63, § 2-408. *See Tidmore v. State*, 95 P.3d 176, 177–78 (Okla. Crim. App. 2004). The defendant in *Tidmore* argued that "endeavoring to manufacture is equivalent to attempt to commit a crime." *Id.* at 177. The OCCA disagreed, explaining that "the statutory language indicates the Legislature was aware of the difference between an attempt, as traditionally defined in criminal law, and endeavoring, and intended to criminalize both actions where methamphetamine is concerned." *Id.* at 177–78. The OCCA concluded that "[t]he endeavoring statute is completely separate from the general statute defining attempt, and there is no requirement of an overt act[9] to complete the crime." *Id.*

---

[8] As Oklahoma's court of last resort for criminal appeals, the OCCA's interpretation of state law is controlling.

[9] Although "overt act" most often refers to an element of conspiracy, the OCCA has occasionally referred to attempt's "perpetrating act" requirement as "an

12

As shown above, a conviction for attempt under Oklahoma law requires that the defendant commit a "perpetrating act." OUJI-CR 2-11. And "a perpetrating act must be distinguished from mere preparation to commit a crime." OUJI-CR 2-12. Thus, *Tidmore* held that an element required to convict for attempt—a perpetrating act, the functional equivalent of a substantial step—is absent from the elements of endeavoring.

In the face of this categorical mismatch, the government advances two arguments. First, the government points out that Application Note 1 to § 4B1.2 deems two federal statutes criminalizing the manufacture of controlled substances to be controlled substance offenses, declaring that:

> Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a "controlled substance offense."

> Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a "controlled substance offense."

U.S.S.G. § 4B1.2 cmt. n.1. The government argues that because Oklahoma's "endeavoring" statute is *typically* used to charge individuals found to have possessed "precursors" to methamphetamine production, the offense is a categorical match with the above offenses. But these federal statutes criminalize the possession of specific physical objects, whereas "endeavoring" is unconcerned with the precise conduct amounting to "any effort to do or accomplish the evil purpose that the law enacted to prevent."

---

overt, perpetrating act." *See Pierce v. State*, 766 P.2d 365, 366 (Okla. Crim. App. 1988).

Oklahoma's endeavoring statute thus criminalizes more than, and is not a categorical match with, the possession offenses listed in the Guidelines.

Second, the government argues that "endeavoring necessarily implies the same intent and action inherent in an uncompleted attempt." Aple. Br. at 11. In support, the government sets forth the definition of endeavor from Black's Law Dictionary,[10] as well as several federal cases analyzing the meaning of endeavor. But none of those authorities defines the contours of "endeavoring" under Oklahoma law.[11] *See Harris*, 844 F.3d at 1264 ("[S]tate law defines the substantive elements of the crime of conviction."). Oklahoma's mandatory jury instructions and the OCCA's construction of "endeavoring" collectively supply the constituent elements of that crime. As a

---

[10] Black's Law Dictionary presently defines "endeavor" as "[a] systematic or continuous effort to attain some goal; any effort or assay to accomplish some goal or purpose." *Endeavor*, Black's Law Dictionary (11th ed. 2019). Prior to the adoption of Oklahoma's jury instruction defining endeavoring, Oklahoma courts provided juries with an earlier iteration of the Black's Law Dictionary definition, instructing juries that endeavoring meant "to exert physical and intellectual strength toward the attainment of an object; a systematic or continuous effort." *See Tidmore v. State*, 95 P.3d 176, 178 (Okla. Crim. App. 2004). As the OCCA noted in *Tidmore*, that definition is narrower than the "any effort" jury instruction now in effect. *See id.* ("In fact, the more restrictive [Black's Law Dictionary] definition given to Tidmore's jury arguably benefited him.").

[11] Again, the jury in *Tidmore* received an earlier version of Black's Law Dictionary definition of endeavor only because the trial occurred prior to the adoption of the current uniform jury instruction defining endeavor as "any effort to do or accomplish the evil purpose that the law was enacted to prevent." *See Tidmore*, 95 P.3d at 178 (contrasting the defendant's jury instruction with the newly-instituted uniform instruction). Our decision denying a certificate of appealability in *Milburn v. Hines*, 146 F. App'x 269, 271 (10th Cir. 2005), referenced the same Black's Law Dictionary definition of endeavor because the habeas petitioner there was similarly tried before the current uniform jury instruction was in effect.

14

result, we reject the government's efforts to contract the scope of that crime by reference to other authorities.

Because Oklahoma's endeavoring statute sweeps more broadly than the generic definition of attempt, it was error for the district court to have regarded Mr. Faulkner's prior state conviction as a "controlled substance offense" for purposes of base offense level computation.

## B. *Whether the Error was Plain*

An error is plain if it is "clear or obvious under current, well-settled law." *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). "For an error to be plain and contrary to well-settled law, either this court or the Supreme Court must have addressed the issue." *United States v. Marquez*, 898 F.3d 1036, 1051 (10th Cir. 2018). "The absence of . . . precedent [on point] will not, however, prevent a finding of plain error if the district court's interpretation was clearly erroneous." *United States v. Poe*, 556 F.3d 1113, 1129 (10th Cir. 2009) (alterations in original) (quotation marks omitted).

Mr. Faulkner advances two main arguments in connection with the clear or obvious inquiry. First, he argues that the absence of "endeavoring" from the list of inchoate offenses in Application Note 1 to § 4B1.2 suffices, without more, to establish the obviousness of the error. Second, he contends our opinions in *McKibbon*, 878 F.3d at 972–74, and *Madkins*, 866 F.3d at 1145–48, serve as circuit precedent rendering this issue well-settled. We disagree.

Mr. Faulkner's first argument fails because the categorical approach does not depend on mere differences in language. *See Mendez*, 924 F.3d at 1125 ("A statute that mirrors the generic definition of an offense but makes minor variations in terminology will suffice if it 'corresponds in substance to the generic meaning.'" (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990))); *cf. United States v. Servin-Acosta*, 534 F.3d 1362, 1366 (10th Cir. 2008) ("A State's designation of a criminal provision as its 'robbery' statute does not necessarily mean that it qualifies as 'robbery' under [the Guidelines].").

And as noted above, the enumerated offenses in Application Note 1 are not exhaustive. As such, the absence of the word "endeavoring" from the commentary, without more, does nothing to establish the obviousness of the error. *See Cornelio-Pena*, 435 F.3d at 1284 ("[O]ffenses similar to aiding and abetting, conspiring, and attempting to commit offenses that otherwise meet the definition of 'crime of violence' are included in § 2L1.2(b)(1)(A)(ii)."). For example, in *Madkins*, we concluded that a Kansas statute criminalizing an "offer" to sell a controlled substance was not a categorical match with the Guidelines' definition of a controlled substance offense. 866 F.3d at 1147–48. But it was immaterial to our analysis that the word "offer" was missing from the inchoate offenses listed in Application Note 1. To the contrary, we observed that "at first glance, it seems as though an offer for sale would fit squarely within the definition in the Guidelines, since the commentary to § 4B1.2 clarifies that a controlled substance offense includes an attempt to commit such an

offense." *Id.* at 1147. In sum, the district court's error was not obvious merely because the commentary does not list "endeavoring" as a qualifying offense.

Mr. Faulkner's argument that our precedent renders this issue well-settled is also unavailing. He articulates the "clear or obvious" analysis at too high a level of abstraction, asserting that our precedent forecloses "imposing a guideline enhancement for a controlled substance offense based on a prior conviction that is not within the definition in § 4B1.2(b)." Opening Br. at 13. This conception of the relevant level of analysis is far too broad. A comparison of the cases adduced by Mr. Faulkner, *Madkins* and *McKibbon*, usefully illustrates the appropriate level of generality for purposes of the clear or obvious inquiry.

As stated above, our opinion in *Madkins* held, applying de novo review, that a Kansas statute criminalizing possession with intent to sell controlled substances was broader than the Guidelines' definition of a "controlled substance offense." 866 F.3d at 1147–48. We examined the relevant pattern jury instruction and Kansas Supreme Court decisions to determine that the state statute criminalized mere offers to sell controlled substances. *Id.* at 1146. We concluded that "because a person can offer a controlled substance for sale without having the intent to actually complete the sale, a conviction for an offer to sell can be broader than the conviction for an attempt to sell." *Id.* at 1147.

Consistent with that reasoning, we concluded in *McKibbon* that a conviction under a Colorado statute criminalizing "an offer" to sell a controlled substance similarly did not qualify under § 4B1.2(b). 878 F.3d at 972–74. We further held that

17

the error was plain, explaining that "the Tenth Circuit has clearly held that § 4B1.2(b) does not include offers to sell controlled substances." *Id.* at 976. From *Madkins*, it was obvious that state statutes criminalizing mere offers to sell a controlled substance do not qualify as "controlled substance offenses" for purposes of base offense level computation. Thus, *McKibbon*'s clear or obvious analysis implies that there need not be an in-circuit case dealing with the precise state statute at issue if there is a case that sets forth a principle clearly generalizable to the subject statute.

But neither *Madkins* nor *McKibbon* establish clear or obvious error here. And neither this circuit nor the Supreme Court has held that endeavor reaches more broadly than attempt in a related statutory context. Without such a case, Mr. Faulkner cannot establish that the district court's error was clear or obvious. Therefore, it was not plain.

## III.   CONCLUSION

Although it was error to treat Mr. Faulkner's conviction for endeavoring to manufacture methamphetamine as a controlled substance offense for purposes of base offense level computation, that error was not plain or obvious. The district court is **AFFIRMED.**

18

18-7066, *United States v. Faulkner*

**HOLMES**, J., concurring.

I respectfully concur in the result of the majority's well-written opinion; that is, I vote to affirm the district court's sentencing judgment. I specifically join only Part II.B, however. I see no need to reach the first prong of the plain-error test, which addresses the question of whether the district court actually erred. Rather, I am content to conclude, under the second prong of that test, that the district court did not plainly (i.e., clearly or obviously) err. Consequently, Mr. Faulkner cannot carry his burden under the plain-error test, and his sentencing challenge must fail. On that basis, I respectfully concur.