**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 11, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

VICTOR CRUZ-CRUZ,

     Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

VICTOR CRUZ-CRUZ, a/k/a Basilio
Cruz-Cruz,

     Defendant - Appellant.

_____

No. 22-2050
(D.C. No. 2:21-CR-01286-KG-1)
(D. N.M.)

No. 22-2051
(D.C. No. 2:21-CR-01178-KG-1)
(D. N.M.)

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **EID**, Circuit Judges.
_____

---

    [*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Defendant-Appellant Victor Cruz-Cruz was living in Mexico when he began receiving threats from a cartel, which motivated him to flee Mexico for the United States. U.S. border patrol agents intercepted him near the border, and he eventually pleaded guilty to violating 8 U.S.C. § 1326 for unlawfully reentering the United States after entering unlawfully on several previous occasions. At sentencing, the district court imposed a 30-month term of imprisonment in connection with Mr. Cruz-Cruz's latest reentry violation. The court also found that Mr. Cruz-Cruz had violated terms of supervised release that were in place due to a previous reentry offense. It imposed an 18-month sentence for the supervised-release violation, with 6 months to run consecutive to the sentence for Mr. Cruz-Cruz's latest reentry conviction, yielding a total sentence of 36 months' imprisonment.[1]

During the sentencing hearing, before setting Mr. Cruz-Cruz's guidelines range or analyzing the relevant factors under 18 U.S.C. § 3553(a), the district court warned Mr. Cruz-Cruz that "that if you do return in the future, the sentence does become much longer with each return." The court then imposed a term of imprisonment that exceeded the sentence Mr. Cruz-Cruz received for his previous reentry offense. Mr. Cruz-Cruz argues for the first time on appeal that the district court committed a plain procedural error by determining, before undertaking the relevant statutory sentencing analysis, that his sentence must exceed the term imposed on his previous reentry conviction. He also

---

[1] This case on appeal is comprised of two consolidated actions: No. 22-2050, in which Mr. Cruz-Cruz was convicted of unlawful reentry; and No. 22-2051, which is the revocation proceeding.

argues—again for the first time on appeal—that 8 U.S.C. § 1326 is unconstitutional because Congress enacted the statute based on discriminatory animus. Mr. Cruz-Cruz acknowledges that he cannot establish plain error at this juncture because there is no controlling precedent that supports his challenge. However, he observes that we are considering the same constitutional challenge in *United States v. Amador-Bonilla*, No. 22-6036, and says that he is raising his challenge solely for purposes of preservation, in the hopes of benefitting from a ruling favorable to the defendant in *Amador-Bonilla*.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we hold that the district court did not plainly err. Accordingly, we uphold Mr. Cruz-Cruz's conviction and sentence and **affirm** the district court's judgment.

## I

Mr. Cruz-Cruz was born in Veracruz, Mexico. He first entered the United States illegally as a minor, and he lived here for approximately eight years, at which point he was deported. Between 2008 and 2018, Mr. Cruz-Cruz unlawfully reentered the United States and was deported back to Mexico on four other occasions. Notably, Mr. Cruz-Cruz had been previously convicted in federal court on three separate occasions for reentry-related offenses. As most relevant here, in 2010, he was convicted of such an offense in a New York federal court and sentenced to 18 months' imprisonment and three years of supervised release. And, in 2018, he was convicted of another reentry offense in an Arizona federal court and sentenced to 24 months' imprisonment and three years of supervised release. He completed his term of imprisonment for this 2018 offense in 2019 and was thereafter deported to Mexico for the fifth time. His conditions of release

3

included a requirement that he refrain from committing another federal offense and from reentering the United States without permission.

After his fifth deportation, Mr. Cruz-Cruz did return to Veracruz and begin working as a municipal police officer. Several months later, he began receiving two paychecks and learned that one of the checks came as a "tip[]" from a cartel. R., Vol. II, ¶ 41, at 12 (Presentence Investigation Report ("PSR"), filed Jan. 19, 2022). He thereafter quit the police force, but the cartel began sending him threats, so he relocated to another village. The cartel persisted, issuing threats to his family, at which point he relocated to another city in Mexico and arranged to reenter the United States. While he was in transit, the Cartel De El Noreste kidnapped Mr. Cruz-Cruz and held him for ransom. His family paid the ransom, and he thereafter fled to the United States.

On June 4, 2021, border patrol agents found Mr. Cruz-Cruz in southern New Mexico without legal authorization. At that time, Mr. Cruz-Cruz was still serving a term of supervision in connection with his 2018 unlawful reentry offense. Mr. Cruz-Cruz pleaded guilty without a plea agreement to one count of unlawful reentry in violation of 8 U.S.C. § 1326(a)(1) and (2), and 8 U.S.C. § 1326(b)(2). The Presentence Investigation Report ("PSR") calculated his guidelines range on this count as 30-to-37 months' imprisonment. Mr. Cruz-Cruz also later admitted at his sentencing hearing that the same conduct violated his conditions of supervised release, for which the court listed his guidelines range as 18 to 24 months.

Neither party objected to the PSR, and Mr. Cruz-Cruz moved for a downward variance. His motion explained in detail the dangerous circumstances that led him to flee

Mexico for the United States.  He also explained that he grew up poor, in an abusive household, and that his priority now is to return to Mexico in order to pay his family back for the ransom they paid and to help finance his ill mother's medical expenses.

The government requested a bottom-guidelines sentence of 30 months' imprisonment on the new reentry conviction and 18 months on the supervised release violation, with 9 months to run concurrently, for a total of 39 months.  In doing so, the government emphasized that Mr. Cruz-Cruz's previous sentence for unlawful reentry had not deterred him from unlawfully reentering the United States again in 2021.  With respect to his claim that he fled Mexico out of concern for his safety, the government responded that he had not presented himself to border officials with a fear-based claim for relief.

The district court then held a combined hearing on (1) the revocation and sentencing for Mr. Cruz-Cruz's violation of supervised release, and (2) sentencing for his unlawful reentry conviction.  At the hearing, Mr. Cruz-Cruz admitted that he violated the conditions of his supervised release.  The court then heard arguments from the parties as to Mr. Cruz-Cruz's sentence for his violation of supervised release and unlawful reentry.

Following arguments, the court addressed Mr. Cruz-Cruz.  It began by asking whether he had a plan to protect himself upon returning to Mexico.  *See* R., Vol. IV, at 21 (Sentencing Hr'g Tr., dated Apr. 13, 2022).  After receiving some assurances, the court then addressed Mr. Cruz-Cruz's criminal history, explaining that this was Mr. Cruz-Cruz's "third conviction for returning to the United States without permission" and

5

recounting the 18-and 24-month sentences he had received for his previous reentry

offenses. *Id.* at 22. The court then made the following remarks:

> *Now, it's very important that you do remember and consider that if you do return in the future, the sentence does become much longer with each return.* And this is because any sentence has to promote respect for the law. And this being your third conviction, it is my intention to impose a sentence to promote respect for the law and to deter you from returning ever again in the future, not unless you have permission to do so.

*Id.* (emphasis added).

After several other cautionary statements, the court explained the basis for the

sentence it intended to impose, stating:

> I'll explain the sentence to you, Mr. Cruz. First, as to the charge to which you've admitted of returning to the United States after being deported, now, there are no objections to the presentence report, and, therefore, I'll adopt all the factual findings. I've also considered the sentencing guidelines as they apply to your case, including the offense level of 13. Because of the convictions . . . you have on your record, your criminal history category is 5. The range for sentencing is 30 to 37 months.
>
> I've also considered the 3553 factors, including, as I've noted, your history of returning, your criminal history, your family, your son in the United States, and even the danger that resulted in your flight from Mexico.

*Id.* at 23.

The court then imposed its sentence. For the reentry violation, the court imposed a

30-month term of imprisonment, noting that 30 months was the minimum pursuant to the

guidelines and marked a 6-month increase from the sentence imposed in connection with

Mr. Cruz-Cruz's most recent past reentry violation. *See id.* at 23–24. The court also

6

imposed an 18-month sentence for Mr. Cruz-Cruz's violation of his supervised release, of which 12 months would run concurrently with the sentence for his reentry violation, leaving 6 months to run consecutively. *See id.* at 25–26. Neither party raised any objections. Mr. Cruz-Cruz nevertheless subsequently filed this appeal.

## II

Mr. Cruz-Cruz raises two challenges. First, he argues—under a plain error standard, which applies because he failed to raise this argument (i.e., forfeited it) before the district court—that the district court committed a plain procedural error and thereby imposed an unreasonable sentence by "setting an absolute sentencing floor based on the length of [his] prior reentry sentence." Aplt.'s Opening Br. at 5. Second, he argues—again under plain error due to forfeiture in the district court—that 8 U.S.C. § 1326 violates the right to equal protection guaranteed under the Fifth Amendment to the United States Constitution because Congress enacted the statute based on discriminatory animus. Regarding his second argument, Mr. Cruz-Cruz concedes that he cannot satisfy the plain error standard under existing law. But because the same issue is pending before this Court in *United States v. Amador-Bonilla*, No. 22-6036, he raises the issue for purposes of preservation, arguing that if we decide *Amador-Bonilla* in the defendant's favor, the district court's error in sentencing him under § 1326 would become plain requiring reversal.

Taking each issue in turn, we conclude that the district court did not plainly err in connection with either issue Mr. Cruz-Cruz raises on appeal.

7

**A**

We begin with Mr. Cruz-Cruz's argument that the district court imposed an unreasonable sentence. When reviewing a district court's sentence, we follow a "two-step process." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quoting *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008)). First, we review the sentence for "procedural reasonableness" by determining "whether the district court committed any error in calculating or explaining the sentence." *Id.* At the second step, we review for "substantive reasonableness," asking "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008)).

Mr. Cruz-Cruz raises only a procedural challenge. Therefore, we have no need to (and thus do not) reach the second step of the process. He argues that the district court committed a procedural error by setting an absolute sentencing floor commensurate with the length of the sentence imposed in connection with his prior reentry offense.

We ordinarily review procedural challenges to a sentence for an abuse of discretion, but Mr. Cruz-Cruz acknowledges that he did not raise his procedural challenge before the district court, so our review is for plain error. *See United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012). In order to satisfy the plain error standard, Mr. Cruz-Cruz must demonstrate the following: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if it seriously affects the

8

fairness, integrity, or public reputation of judicial proceedings." *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (quoting *United States v. Kimler*, 335 F.3d 1132, 1141 (10th Cir. 2003)).

In this case, we assume *arguendo* that the district court erred because, even assuming it did, any such error was not plain. Our analysis therefore begins and ends with the second prong of our plain error test.

**1**

"An error is plain if it is 'clear or obvious under current, well-settled law.'" *United States v. Faulkner*, 950 F.3d 670, 678 (10th Cir. 2019) (quoting *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013)). Ordinarily, "[f]or an error to be plain and contrary to well-settled law, either this court or the Supreme Court must have addressed the issue." *United States v. Marquez*, 898 F.3d 1036, 1051 (10th Cir. 2018).[2]

---

[2] To be sure, we have observed that "[t]he absence of . . . precedent [on point] will not . . . prevent a finding of plain error if the district court's interpretation was clearly erroneous." *United States v. Poe*, 556 F.3d 1113, 1129 (10th Cir. 2009) (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)). But we have generally applied this principle in circumstances where a statutory term clearly dictated a particular interpretation that the district court contravened. *See United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (concluding that the error was plain, even absent precedent on point where the guidelines provision at issue "clearly and obviously" foreclosed the district court's interpretation); *cf. Ruiz-Gea*, 340 F.3d at 1187–88 (discerning no error that was plain, where no precedent was on point and the defendant's interpretation of the relevant statutory provision was "not compelled"). Here, the resolution of the inquiry into whether the district court erred does not turn on the court's interpretation of particular statutory language. Accordingly, this limited aspect of the plain error standard is not at issue here.

Mr. Cruz-Cruz argues that "the Supreme Court and this Court have plainly established 'a required order of operations in federal sentencings'" under which a district court "is supposed to start with the facts, calculate the advisory guideline range, and then decide whether a variance is warranted to ensure a just sentence." Aplt.'s Opening Br. at 7 (quoting *United States v. Moore*, 30 F.4th 1021, 1025 (10th Cir. 2022)). That process, he continues, requires courts to "start with the guidelines as [the] 'initial benchmark,' and then 'make individualized determinations based on the applicable statutory criteria.'" *Id.* at 8 (first quoting *Peugh v. United States*, 569 U.S. 530, 536 (2013); then quoting *United States v. Hartley*, 34 F.4th 919, 928–29 (10th Cir. 2022)).

Yet before adopting the uncontested guidelines range from the PSR or analyzing the § 3553(a) factors, the district court stated that if Mr. Cruz-Cruz reentered the United States again, "the sentence does become much longer with each return." R., Vol. IV, at 22. The judge then stated his "intention to impose a sentence to promote respect for the law and to deter [Mr. Cruz-Cruz] from returning ever again in the future." *Id.* And after specifying the guidelines range and reviewing the § 3553(a) factors, the court then imposed a sentence that "mark[ed] a six-month increase from the sentence" Mr. Cruz-Cruz received on his prior reentry offense. *Id.* at 24. Mr. Cruz-Cruz argues the district court plainly erred by setting an absolute sentencing floor that was tied to the length of the sentence he received for his prior reentry offense.

In arguing that the district court plainly erred, Mr. Cruz-Cruz relies on two of our recent precedents—*Moore* and *Hartley*—where we concluded that the district court did procedurally err by following a sentencing approach that effectively precluded

10

individualized analysis.  In *Moore*, the district court offered the defendant a choice in selecting his sentence.  *See* 30 F.4th at 1022.  The defendant could have accepted an immediate 51-month term of imprisonment, which the government recommended, and which fell at the low end of his guidelines range.  *See id.* at 1023.  Alternatively, the court offered him a 48-month sentence of probation, subject to at least an 84-month term of imprisonment for any future probation violation.  *See id.* at 1022–23.  The defendant chose the latter option, and when he violated the terms of his probation, the district court sentenced him to the 84-month term of imprisonment it had promised.  *See id.* at 1023–24.

We held that the district court committed plain procedural error.  *See id.* at 1025.  As we explained, Supreme Court and Tenth Circuit precedent "have established a required order of operations in federal sentencings" under which "[a] district court 'is supposed to start with the facts,' calculate the advisory guideline range, and then 'decide whether a variance is warranted to ensure a just sentence.'"  *Id.* (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014)).  "[T]he plain error" in *Moore*, we reasoned, "lies in preordaining a minimum future sentence and bypassing the required analysis that is available only after probation has been revoked."  *Id.*  When a defendant violates his terms of probation, district courts must consider the § 3553(a) factors in deciding whether to continue the term of probation without revision or revoke probation and resentence the defendant.  *See id.* at 1026.  In *Moore*, the district court "bypass[ed]" that process by "preordaining" the sentence it would impose were the defendant to violate his terms of probation.  *Id.* at 1025.  The "problem" with the district court's procedure is

11

that it could not "have known whether Mr. Moore's future conduct would justify the at-least-33-month-consecutive increase to its offered 51-month sentence." *Id.* Thus, we held the district court plainly erred.

The second case Mr. Cruz-Cruz invokes is *Hartley*. There, two different defendants moved for early termination of their probation in separate proceedings before the same district judge. *See* 34 F.4th at 923–24. The judge denied their motions, reasoning—categorically—that early termination is not appropriate when probation constitutes the defendant's entire sentence. *See id.* The judge employed the same language in denying both motions, as well as those of other defendants. *See id.*

We held that the district court abused its discretion by "categorical[ly] reject[ing] . . . early termination of probation in these cases." *Id.* at 932. District courts may "terminate probation upon consideration of (1) the applicable 18 U.S.C. § 3553(a) factors, (2) 'the conduct of the defendant,' and (3) 'the interest of justice.'" *Id.* at 930–31 (quoting 18 U.S.C. § 3564(c)). *Hartley* reasoned that the "district judge's blanket policy" of denying early termination when probation amounted to the defendant's entire sentence "is in direct conflict with . . . statutory . . . rules governing probation." *Id.* (quoting *United States v. Souser*, 405 F.3d 1162, 1167 (10th Cir. 2005)). As we explained, "[t]he district court abused its discretion by refusing to exercise its discretion properly under § 3564(c)." *Id.* at 933.

Mr. Cruz-Cruz argues that *Moore* and *Hartley* render the district court's sentencing decision in his case plainly erroneous. Like the sentencing decisions in those cases, Mr. Cruz-Cruz argues that the district court, here, erroneously cabined its

12

discretion by indicating it would adopt—and then actually adopting—a sentence that exceeded the length of what he received on his prior reentry offense. In doing so, Mr. Cruz-Cruz argues the court "violated the established order of operations" and failed to consider how all the relevant factors "weighed against each other in this individual case." Aplt.'s Opening Br. at 9–10.

2

Assuming *arguendo* that the district court erred, we conclude that its error was not plain—that is, clear or obvious. The district court did not commit the specific procedural errors that required reversal in *Moore* and *Hartley*, and those cases therefore do not constitute "well-settled law" that definitely resolves the issue Mr. Cruz-Cruz presents. *Faulkner*, 950 F.3d at 678 (quoting *Brooks*, 736 F.3d at 930).

In *Moore* and *Hartley*, we concluded that the district courts erred because they explicitly predetermined the outcome of the defendants' sentencing proceedings or applied a categorical policy that prevented the courts from analyzing the relevant statutory factors. In *Moore*, the district court set a specific minimum sentence—84 months—if the defendant were to violate his terms of parole, which the court then applied when a violation occurred. *See* 30 F.4th at 1022–24. We concluded that the court plainly erred in doing so because it "bypass[ed] the required analysis" that applies in a revocation proceeding, and it "could[] [not] have known whether [the defendant's] future conduct would justify the at-least-33-month-consecutive increase to [the court's] offered 51-month sentence." *Id.* at 1025. Likewise, in *Hartley*, before undertaking the relevant statutory analysis, the district court adopted a "blanket policy" that

13

"categorical[ly] reject[ed] . . . early termination of probation" where probation constitutes the entirety of the defendant's sentence.  34 F.4th at 930–32.

By contrast, in this case, the district court did not predetermine a specific sentence or apply a categorical policy.  It stated that "if you do return in the future, the sentence does become much longer with each return."  R., Vol. IV, at 22.  But the court never stated it would impose a longer sentence for Mr. Cruz-Cruz's latest violation based on any legal requirement or "blanket policy" without considering the full range of factors that govern sentencing determinations.  *Cf. Hartley*, 34 F.4th at 931; *Moore*, 30 F.4th at 1025.  Rather, its statement is most naturally read as a factual description of what typically occurs when federal courts sentence defendants for repeated unlawful reentry offenses in light of the statutory requirement that they impose sentences that "afford adequate deterrence" and "promote respect for the law."  18 U.S.C. § 3553(a)(2)(A)–(B).[3]  Indeed, the court's statement that "the sentence does become much longer with

---

[3]     As the government argues, the general principle that repeated violations tend to increase a defendant's sentence permeates the federal sentencing regime.  *See* Aplee.'s Resp. Br. at 12.  The guidelines capture this principle:

> The Comprehensive Crime Control Act sets forth four purposes of sentencing. (*See* 18 U.S.C. § 3553(a)(2).) A defendant's record of past criminal conduct is directly relevant to those purposes. A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.

U.S. Sent'g Guidelines Manual Ch. 4, Pt. A, intro. comment (U.S. Sent'g Comm'n 2021).

each return" immediately prefaced its discussion of deterrence, where the court explained it "inten[ded] to impose a sentence" that would "promote respect for the law and . . . deter [Mr. Cruz-Cruz] from returning ever again."  R., Vol. IV, at 22.

Furthermore, the district court's general statement that "if you do return in the future, the sentence does become much longer with each return," did not prevent it from conducting an analysis pursuant to the applicable order of operations.  *Id.*  Specifically, after issuing background admonitions regarding repeated reentry violations, the court discussed Mr. Cruz-Cruz's guidelines range and addressed the § 3553(a) factors.  *See id.* at 23.  And in doing so, the court accounted for "the danger that resulted in [Mr. Cruz-Cruz's] flight from Mexico."[4]  *Id.*  Thus, although the court revealed an intent to impose a sentence that was designed to deter future reentry violations, it did so as part of the holistic analysis required under our precedents.

On plain error review, "[w]e . . . traditionally do not disturb decisions entrusted by statute or other rule of law to the discretion of a district court unless we have 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"  *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir. 2007) (quoting *United States v. Weidner*, 437 F.3d 1023, 1042

---

[4]     Although the district court's analysis under the § 3553(a) factors was arguably cursory, when imposing a sentence within the guidelines range, our precedents do not require more.  *See United States v. Lopez-Florez*, 444 F.3d 1218, 1222 (10th Cir. 2006) ("When the defendant has not raised any substantial contentions concerning non-Guidelines § 3553(a) factors and the district court imposes a sentence within the Guidelines range, our post-*Booker* precedents do not require the court to explain on the record how the § 3553(a) factors justify the sentence.").

(10th Cir. 2006)). Moreover, we are guided by our traditional presumption that "[t]rial judges . . . know the law and apply it in making their decisions." *Id.* (quoting *United States v. Russell*, 109 F.3d 1503, 1512–13 (10th Cir. 1997)). Accordingly, we decline here to find plain (i.e., clear or obvious) error based on a statement that appears to describe a factual reality of sentencing for repeated unlawful reentry violations and does not purport to invoke any legal requirement or blanket policy demanding successively longer sentences.

To be sure, in *Hartley* we cautioned against drawing overly narrow distinctions in this area. *See* 34 F.4th at 932 n.8. As we explained, our "cases stand for the broader proposition that in the sentencing context a district court may not base its decision on 'its own policy' and 'own custom,' or a 'preordain[ed] . . . minimum future sentence and bypass[ ] the required analysis.'" *Id.* (first quoting *United States v. Cozad*, 21 F.4th 1259, 1266–67 (10th Cir. 2022); then quoting *Moore*, 30 F.4th at 1025). But the district court here did not base its sentencing determination on its own rigid policy or preordain Mr. Cruz-Cruz's sentence in a way that bypassed the requisite statutory analysis.

**3**

Though it does not bind us on this appeal, the analysis of a Tenth Circuit panel in *United States v. Corchado-Aguirre*, 629 F. App'x 837 (10th Cir. 2015) (unpublished), is persuasive and reinforces our conclusion.

*Corchado-Aguirre* addressed a procedural challenge to the defendant's sentence for his fifth reentry conviction. *See* 629 F. App'x at 838. In connection with his fourth conviction, the defendant had received a 15-month sentence. *See id.*

16

When considering the sentence for his fifth conviction, the district court judge made several remarks concerning the appropriate sentence length. The judge stated the following: "[T]he sentences [for Mr. Corchado-Aguirre'[sic] illegal entry offenses] are getting longer, and nothing seems to work here." *Id.* at 840 (alterations in original). The judge also stated that "[i]t would not be appropriate to sentence him to the same things he's received in the past" and that "15 months . . . doesn't seem to deter Mr. Corchado-Aguirre." *Id.* The judge then sentenced the defendant to a 16-month term of imprisonment. *See id.* In light of the judge's remarks, the defendant argued that the judge committed a procedural error because he mistakenly believed that, as a matter of law, he had to sentence the defendant to a term that exceeded what the defendant received in connection with his previous reentry violation. *See id.* at 839.

A panel of our court, however, rejected the defendant's position. *See id.* at 840–41. As the panel reasoned, the district court's "conclusion that the need for deterrence called for a sentence that was one month longer than his previous sentence for illegal re-entry was not based on an understanding that the law dictated such a result." *Id.* at 840. Rather, it was based on the court's "consideration that 15 months did not deter Mr. Corchado-Aguirre from reoffending for the fifth time." *Id.* The court simply "decided a longer sentence was needed to provide added deterrence." *Id.*

We interpret the district court's statements to Mr. Cruz-Cruz in a similar light. As in *Corchado-Aguirre*, the district court here never stated that the law or its own

17

blanket policy required the court to impose successively longer sentences for each reentry offense. Rather, read in context, the court's statement that "the sentence does become much longer with each return" was part of its discussion stressing the need to promote deterrence. R., Vol. IV, at 22. Immediately after referring to increasingly longer sentences for future violations, the court emphasized that it planned "to impose a sentence [that would] promote respect for the law and . . . deter [Mr. Cruz-Cruz] from returning ever again." *Id.* The district court's statements suggest the court imposed a longer sentence on Mr. Cruz-Cruz's latest reentry conviction "not because it thought the law compelled it, but because the defendant's history of immigration offenses and sentences and the deterrence considerations called for it in this case." 629 F. App'x at 840.

\* \* \*

For the foregoing reasons, we conclude that Mr. Cruz-Cruz has failed to establish that the district court's sentencing determination amounted to procedural error that was "clear or obvious under current, well-settled law." *Faulkner*, 950 F.3d at 678 (quoting *Brooks*, 736 F.3d at 930).

**B**

Mr. Cruz-Cruz also argues that the statute under which he was convicted, 8 U.S.C. § 1326, is unconstitutional because Congress enacted the statute based on racially discriminatory animus, thereby violating the guarantee of equal protection under the Fifth Amendment to the United States Constitution. *See* Aplt.'s Opening Br. at 13 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). As Mr. Cruz-

Cruz acknowledges, he did not raise this argument before the district court. *See id.* at 14.

But he explains that the same issue is before us in *United States v. Amador-Bonilla*, No.

22-6036, so he raises the argument here solely for purposes of preservation. *See id.* He

argues that if *Amador-Bonilla* comes down in favor of the defendant, he could satisfy our

plain-error standard, which would require that we vacate his latest conviction under

§ 1326 and remand for resentencing on his supervised released violation. *See id.* at 13–

14.

The government responds that Mr. Cruz-Cruz cannot establish plain error on the

grounds that § 1326 is unconstitutional because no Supreme Court or Tenth Circuit case

has reached that conclusion. *See* Aplee.'s Resp. Br. at 17–18. However, the government

acknowledges that if the Supreme Court or this Court were to strike down § 1326 on the

grounds Mr. Cruz-Cruz raises here, he has preserved his challenge. *See id.*

We conclude that Mr. Cruz-Cruz has preserved his right to pursue his

constitutional challenge to § 1326 in the event we issue a ruling that is favorable to the

defendant in *Amador-Bonilla*. Yet to be clear, we have yet to issue a decision in *Amador-*

*Bonilla*. And, as Mr. Cruz-Cruz concedes, *see* Aplt.'s Opening Br. at 6, he cannot—at

present, without a favorable ruling in *Amador-Bonilla*—establish that the district court

committed a "clear or obvious" error "under current, well-settled law." *Faulkner*, 950

F.3d at 678 (quoting *Brooks*, 736 F.3d at 930). Accordingly, even assuming that § 1326

is unconstitutional and the district court consequently erred in applying it, Mr. Cruz-Cruz

cannot establish at this time that any such error was "plain"—that is, clear or obvious. *Id.*

We therefore reject his constitutional challenge to his conviction under § 1326.

**III**

For the foregoing reasons, we **AFFIRM** the district court's judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge